SEABOARD SURETY COMPANY, Appellant, *v.* STANDARD ACCIDENT INSURANCE COMPANY, Respondent.

430

Argued March 8, 1938; decided April 12, 1938.

*David S. Konheim, Eugene L. Jabush* and *William Lurie* for appellant. The plaintiff sustained a loss within the meaning of defendant's bond. (*United States v. American Surety Co.*, 200 U. S. 197; *Mankin v. United States*, 215 U. S. 533; *United States v. Baird Co.*, 73 Fed. Rep. [2d] 652; *Illinois Surety Co. v. Davis Co.*, 244 U. S. 376; *Pacific States Electric Co. v. U. S. F. & G. Co.*, 109 Cal. App. 691; *Mayes v. Lane*, 116 Ky. 566; *Closson v. Billman*, 161 Ind. 610; *Stoddard v. Hibbler*, 156 Mich. 335; *Empire State Surety Co. v. Lindenmeier*, 54 Col. 497; *Friend v. Ralston*, 35 Wash. 422; *Kiewit v. Carter*, 25 Neb. 460; *Boone v. Maloney*, 171 Okla. 454; *Cockrill v. Davie*, 14 Mont. 131; *Strong v. American Fence Constr. Co.*, 245 N. Y. 48.)

*Daniel Combs* for respondent. The Hurd Act (U. S. Code, tit. 40, § 270) taken alone has no effect to impose upon the surety for a government contractor liability for claims of persons furnishing material in the prosecution of public work. (*United States v. Stewart*, 288 Fed. Rep. 187; *United States v. Starr*, 20 Fed. Rep. [2d] 803; *United States v. Montgomery Heating & Ventilating Co.*, 255 Fed. Rep. 683; *Babcock & Wilcox v. Am. Surety Co.*, 236 Fed. Rep. 340; *Trimount Dredging Co. v. United States Fidelity & Guaranty Co.*, 166 Md. 556.)

FINCH, J. Whether the surety of a subcontractor is liable on its bond to the general contractor for an unpaid bill for materials incorporated in the work under the subcontract made with a general contractor doing building work for the United States government where the subcontractor has failed to complete the work or pay for the material furnished, is the question of law presented.

A motion by defendant for judgment on the pleadings was granted, and the Appellate Division has affirmed.

The relevant allegations of the complaint are as follows: One Lundberg entered into a contract with the United States of America to remodel a postoffice and courthouse in

Butte, Montana. Simultaneously with entering into this contract, Lundberg executed a bond conditioned upon his performance of the contract in accordance with its terms and providing that he would pay promptly all persons supplying labor and materials. This bond, obtained from the plaintiff, was required by the provisions of the Hurd Act (U. S. Code, tit. 40, § 270). Thereafter Lundberg entered into a subcontract for a portion of the work and materials with the Interstate Heating and Plumbing Company. This subcontract provided, among other things, that Interstate " shall and will provide all the materials and perform all the work for the plumbing, sanitary and roof drainage, heating apparatus, and ventilating in the present postoffice in Butte, Montana, and the addition thereto." The defendant herein, by its written bond, guaranteed to indemnify Lundberg in a sum not exceeding $14,000 " against loss or damage directly caused by the failure of the principal [Interstate Heating and Plumbing Company] to faithfully perform " this subcontract.

Lundberg was unable to carry the work to completion and the plaintiff undertook and did complete the work in accordance with the contract. After the plaintiff undertook performance, the Interstate agreed to continue the performance of its subcontract under the direction of the plaintiff as general contractor, and the defendant, as surety for the Interstate, acknowledged the right of subrogation of the plaintiff in the bond, and acknowledged it as successor obligee thereunder. Interstate failed to complete the work under its subcontract. At the time there were unpaid material bills which had been incurred by Interstate amounting to approximately $6,700, and the plaintiff had in its hands moneys owing to Interstate under the subcontract totaling approximately $7,700. The cost of completion of the subcontract after the default by Interstate was approximately $5,500. Thus the net loss to the plaintiff was approximately $4,500.

The Hurd Act requires any person contracting to do public work for the United States to execute a bond not only for completion but also conditioned on prompt payment of all persons supplying labor and materials in the prosecution of the work. It has been held that a materialman may recover on the bond of the general contractor, even though he supplied material to the subcontractor and even though the subcontractor has already been paid in full. (*Hill* v. *American Surety Co.*, 200 U. S. 197; *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533. See *Illinois Surety Co.* v. *Davis Co.*, 244 U. S. 376, 380.) Where the general contractor fails to furnish such a bond the laborers and materialmen who supply the subcontractors may sue the general contractor and recover from him. (*Strong* v. *American Fence Constr. Co.*, 245 N. Y. 48.)

The plaintiff was bound to pay all unpaid claims for labor and material supplied to its contractor, the Interstate Company. Not only had it undertaken by its bond to pay all such claims, but it had stepped into the shoes of the general contractor; and, as noted above, a general contractor is bound to pay such claims. Therefore, when the Interstate defaulted on its contract, and the unpaid bills for materials were paid by the plaintiff, these bills were paid not as a voluntary act but by compulsion of law. The defendant, by the express terms of its bond, undertook to indemnify the plaintiff " against loss or damage directly caused by the failure of the principal to faithfully perform said contract * * *." When the principal, the Interstate Company, defaulted on the contract, the breach caused loss to the plaintiff arising out of the necessity for completing the work and the necessity for paying for the materials already incorporated in the work, for which the Interstate had failed to make payment.

The failure to pay for material incorporated in the work after the subcontractor had undertaken to " provide all the materials " constituted a breach of the contract with the

general contractor. A contract as in the case at bar which requires the contractor to provide material, under any reasonable construction means that he will pay for the material, and a bond which undertakes to guarantee the faithful performance of such a contract includes within its scope losses suffered because of the failure of the contractor or subcontractor to pay for materials furnished. (*Pacific States Elec. Co.* v. *United States Fidelity & Guaranty Co.*, 109 Cal. App. 691; *Empire State Surety Co.* v. *Lindenmeier*, 54 Col. 497; *Closson* v. *Billman*, 161 Ind. 610; *Mayes* v. *Lane*, 116 Ky. 566; *Stoddard* v. *Hibbler*, 156 Mich. 335; *Cockrill* v. *Davie*, 14 Mont. 131; *Kiewit* v. *Carter*, 25 Neb. 460; *Boone* v. *Maloney*, 171 Okla. 454; *Friend* v. *Ralston*, 35 Wash. 422.)

A different situation exists where the person in whose favor the bond runs is under no obligation to pay the materialmen and they cannot obtain a lien on his property. That was the case in *Schwartz & Co.* v. *Aimwell Co.* (227 N. Y. 184, 187) where this court said: " It has not paid any of them and is not personally liable for their payment. As indicated, no mechanics' liens have been filed, nor are any threatened. Under such circumstances, the plaintiff could not voluntarily pay such claims and then recover the amount paid from the principal or surety on the bond." To enable it to do that, as stated in *Village of Argyle* v. *Plunkett* (226 N. Y. 306), there must " be involved somewhere, as an essential element of its right to recover, damages which have been or may be suffered by it by reason of the failure to pay these debts, and such an element is in our opinion utterly lacking " (p. 312). In the case at bar that element is present. The plaintiff was under legal obligation to pay these materialmen.

We have, then, a contract which obligates the subcontractor to provide materials. The general contractor is obligated by law to pay such materialmen if the subcontractor fails to make payment. The surety of the subcontractor agrees to indemnify the general contractor for all

losses suffered by reason of breach of the contract by the subcontractor. The subcontractor breaches his contract and fails to pay the materialmen. Thereupon, the general contractor pays such materialmen. There can be no doubt that it has suffered a loss by reason of the subcontractor's breach of the contract, which entitled it to indemnification by the surety of the subcontractor.

Any doubt concerning the construction of the bond is dispelled when it is examined in its entirety. Not only does it provide that the surety will indemnify the general contractor against any losses caused by the failure of the subcontractor to perform its contract, but it also provides that, " If at any time there comes to the notice  *  *  * of the Obligee information that any claim for labor performed or for materials furnished the principal in or upon the work specified in the contract remains unpaid  *  *  * the Obligee shall withhold from the principal payment of any moneys due or to become due to the principal under the contract until the payment of such claim  *  *  *." Pursuant to this provision the plaintiff withheld certain payments from the Interstate. The defendant wrote the plaintiff a letter confirming its right to withhold these payments under the above provision of the bond. Unless the bond was intended to cover payments to materialmen by the general contractor, there is no reason why it should contain such a provision obligating the general contractor to withhold payments of money to the subcontractor where it has notice that claims for material are unpaid.

The defendant relies on certain cases in the Federal courts as exonerating the defendant from liability on its bond. (*Babcock & Wilcox* v. *American Surety Co.*, 236 Fed. Rep. 340; *United States* v. *Montgomery H. & V. Co.*, 255 Fed. Rep. 683; *United States* v. *Stewart*, 288 Fed. Rep. 187; cert. denied, 263 U. S. 699; *United States* v. *Starr*, 20 Fed. Rep. [2d] 803; *Trimount Dredging Co.* v. *United States Fidelity & Guaranty Co.*, 166 Md. 556.) None of these cases has bearing on the case at bar, since they were all suits brought either directly by laborers or

materialmen, or on behalf of such laborers or material-
men, and not by the obligee on the bond as in the case
at bar. In the case at bar if a suit had been brought
directly by or on behalf of the unpaid materialmen, it
is doubtful whether the bond issued by the defendant
would entitle the materialmen to recover. In fact in the
leading Federal case the court was careful to point out
that the suit was brought by materialmen, and that " the
cases which give the word ' furnish ' the broad signification
contended for were cases brought by the obligee of the
bond   *   *   *."   (*Babcock & Wilcox* v. *American Surety
Co., supra,* p. 343.)

Moreover the plaintiff had a right to apply moneys due
to the Interstate which were still in its hands toward pay-
ment for materials supplied to but not paid for, by the
Interstate. The failure of the Interstate to complete its
work obligated the plaintiff to pay such unpaid material-
men and to expend additional moneys for the completion
of the work. For either of these purposes the plaintiff
had a right to use the moneys belonging to the Interstate
which it had retained. It was under no obligation to
apply such moneys first toward the completion of the
work. It could just as well apply them toward the pay-
ment of unpaid materialmen. It had retained moneys
belonging to the Interstate sufficient to cover all these
claims of unpaid materialmen and the loss suffered as a
result of the breach of the contract by the Interstate must
be deemed to have been the result of the cost of completing
the work itself. Therefore, even if the construction of the
bond contended for by the defendant were accepted, it still
would be obligated to pay the plaintiff for the loss suffered
which was incurred by reason of the cost of completion.

It follows that the judgments should be reversed and
the motion by the defendant for judgment on the pleadings
denied, with costs in all courts to the plaintiff.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and
RIPPEY, JJ., concur; LEHMAN, J., dissents.

Judgments reversed, etc.