**HOUSTON FIRE & CASUALTY INSURANCE COMPANY, Appellant,**

v.

**E. E. CLOER GENERAL CONTRACTOR,** Inc., and United States Guarantee Company et al., Appellees.

No. 15104.

United States Court of Appeals.
Fifth Circuit.

Dec. 22, 1954.

J. A. Gooch, Fort Worth, Tex., for appellant.

R. F. Snakard, Fort Worth, Tex., Stone, Agerton, Parker & Kerr, Fort. Worth, Tex., for appellees.

Before HOLMES and TUTTLE, Circuit Judges, and ALLRED, District Judge.

TUTTLE, Circuit Judge.

We have here for consideration the question whether that type of surety bond that is generally known as a performance bond, which is conditioned on the faithful performance of the principal contract requiring that the principal "furnish all materials and perform all work as described etc.," but failing to state affirmatively that the contractor will pay for the materials so furnished, requires that such surety stand responsible for the payment of materials admittedly used in furtherance of the contract.

This case is here on appeal from a judgment given by the trial court in favor of Cloer and his surety, United States Guarantee Company, two of the defendants below, over against Houston Fire and Casualty Insurance Company, another defendant below. The action was originally brought by the United States of America for the use of Johns-Manville Sales Corporation, an admitted supplier of materials to Latimer, a subcontractor of Cloer's in a government construction job. The United States Guarantee Company was surety for Cloer under a Miller Act bond, § 270a, Title 40, U.S.C.A. Latimer had defaulted after incorporating the materials purchased from Johns-Manville in the job, and Houston Fire and Casualty Insurance Company, having the option to "(1) Complete the contract in accordance with its terms and conditions, or (2) Obtain a bid or bids for completing the contract within the penal limits of the bond," elected to and did, according to written stipulation in the record, enter upon the job and complete it "in accordance with the plans and specifications of the Latimer Roofing Company." It was clear from the record that this did not mean that Houston paid for

materials previously used by its principal Latimer.

In the action below Houston was not obligated directly to Johns-Manville because it did not execute a Miller Act bond giving a direct right to materialmen. When, therefore, the materialman sued Cloer, the general contractor and his surety, United States Guarantee Company, as well as Houston jointly, Cloer and United States Guarantee Company prayed judgment over against Houston on the bond given by it to Cloer. This bond was a simple document in a penal sum of $21,500, the amount of Latimer's contract, referring to the contract between Latimer and Cloer and stating the condition as follows:

"Now, therefore, the condition of this obligation is such that, if the contractor (Latimer) shall promptly and faithfully perform said contract, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The provisions of the contract that are germane are:

"Section 1. The subcontractor agrees to furnish all materials and perform ·all work as described in Section 2 hereof. * * *

"Section 2. The subcontractor and the contractor agree that the materials to be furnished and the work to be done by the subcontractor are all roofing (Section 4, Part IV) and all sheet metal pertaining to roofing."

On the trial below the court entered up judgment for the use plaintiff, Johns-Manville, against Cloer and his surety, United States Guarantee Company, and then entered judgment in their behalf against Houston Fire and Casualty Insurance Company on the performance bond executed by it.

No difficulties arise as to the construction of the bond executed by appellant. Both parties here agree that Houston is liable unless Latimer or Houston, substituting for Latimer, promptly and faithfully performed Latimer's contract with Cloer. The question that is posed then is what is the proper construction of the contract itself. The trial court stated at one point that the bond should be strictly construed and at another that the bond "should be construed most strongly against the man making it." Appellant complains of this second statement, contending that the rule in Texas is that suretyship contracts must be construed strictly in the surety's favor, citing Bill Curphy Co. v. Elliott, 5 Cir., 207 F.2d 103, and Southern Surety Co. v. Klein, Tex.Civ. App., 278 S.W. 527. We think it unimportant to determine whether there was any inconsistency in the court's comments,[1] because there can be no question

---

1. Any inconsistency in the trial judge's statements is understandable in view of the confusing dicta in certain Texas cases. In Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 615, it was said:

"A contract of suretyship will be strictly construed so as to impose on the surety only such burdens or obligations as clearly come within the terms of the contract, and such contract will not be extended by implication or presumption."

Examination of that opinion shows that such language was quite vigorous and deliberate; nevertheless it was dictum because the court proceeded immediately to say that, construed by any rule, workmen's compensation insurers could not sue on a bond for the protection of " 'sub-

contractors, workmen, laborers, mechanics, and furnishers of materials.' " And although we quoted this dictum as the law of Texas in Bill Curphy Co. v. Elliott, 5 Cir., 207 F.2d 103, we did not actually construe the bond in that case any differently than any contract is construed. With all deference due such a deliberate dictum, nevertheless it seems that the court in the Standard Accident case misunderstood the nature of the so-called rule of *strictissimi juris* and the true import of the Texas cases.

The rule that the liability of a surety is *strictissimi juris* means that, when the meaning of a contract of suretyship, or the scope of the surety's undertaking, has been determined by ordinary rules of construction, then the liability of the surety is not to be extended beyond its

here as to what was meant by the surety bond; it simply stood responsible for the performance of the contract between Latimer and Cloer. That contract will be construed under the ordinary rules of construction, the underlying one of which is to ascertain what the parties meant by their engagements.

 As we read the contract in the light of the circumstances under which it was executed, we conclude that it required not only that Latimer furnish the materials, but also that it furnish them free of any claims of materialmen; or in other words that all materials furnished be paid for by the subcontractor. All parties to the subcontract and its surety bond were charged with knowledge that Cloer had been required to give surety to the United States Government that he would pay all labor and material costs in connection with the principal contract. This much is required by the statute. 40 U.S.C.A. §

270a. Thus Cloer would be obligated to the extent of his financial responsibility to discharge all unpaid obligations incurred by his subcontractor, whether they be obligations for labor or materials. Since he was thus vulnerable as against all such claimants and as Latimer, his subcontractor, knew he was, what did they intend when they signed a contract whereby Latimer agreed to "furnish all materials, and perform all work as described, etc."? Could it be contended that they did not intend that this was to be done at Latimer's expense and out of the contract price? Here the contract provided that the subcontractor was entitled to draw up to 90% of the "work or materials as far as executed and fixed in place," and while the record is silent as to the state of the account between Cloer and Latimer, it is stipulated that Houston "entered upon the job and completed it." It can therefore be assumed that whatever retained per-

strict meaning. Its usual application is to preclude the enlarging of the surety's liability by an extension of time or other modification of the principal obligor's liability, without the surety's consent. The rule does not mean that, where a contract of suretyship is ambiguous, necessitating construction, the surety is entitled to the favorable construction. There the usual rules of construction apply, and the doctrine of *strictissimi juris* is operative only thereafter. In short, the doctrine is not a rule of construction at all, but a rule of substantive law relating to the nature of the surety's liability and his special defenses.

The Texas cases *really involving construction* of suretyship contracts do not apply any special rules of construction in favor of sureties. Woelfel v. Rotan Grocery Co., Tex.Civ.App., 184 S.W. 803; Cooper Grocery Co. v. Eppler, Tex.Civ. App., 204 S.W. 338. Both cases construed the contract *against* the surety, the latter in fact adopting a very strained construction against the surety. See Marshall-Wells Co. v. Tenney, 118 Or. 373, 244 P. 84, 45 A.L.R. 1382. The cases cited as authority in the Standard Accident case, supra, are not in point. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621, 623; Lonergan v. San Antonio Trust Co., 101 Tex. 63, 104 S.W. 1061, 106 S.W. 876,

22 L.R.A.,N.S., 364, 130 Am.St.Rep. 803; Aetna Casualty & Surety Co. v. Russell, Tex.Com.App., 24 S.W.2d 385. They do not involve construction at all (despite a dictum in the Aetna case, which seems to be the source of the confusion), but only the substantive effect of a change in the principal debt or obligation without the surety's consent. These cases seem in accord with the general rule that a material change in the principal obligation, or one which would tend to make the surety's liability more onerous, effects a discharge of the surety.

Not only do we find the Texas cases are actually contrary to the Standard Accident dictum; also we find it difficult to ascertain what substantially different policy considerations apply to a corporation engaged in the surety business on a large scale for compensation, and to an insurance company, or what social purpose could be served by the rule of construction stated in the dictum. In our view of the matter, then, the surety in the present case was favored with as advantageous a concept of Texas law as it should expect. But we decide this case not on a construction of the bond, but of the principal contract, which should of course be construed to ascertain the intentions of the parties thereto, without regard to special rules applicable to persons not parties thereto.

centage was left in Cloer's hands was paid to Houston, since that would be required under the contract. Houston therefore received some substantial amount of money that represented a 10% retained percentage of the very materials for the payment of which it disclaims responsibility, since 10% of the value of materials in place was withheld from each month's estimate. This brings into play the principle that where the surety elects to step into the shoes of the contractor in such a case, it does so *cum onere*. It becomes entitled to all the benefits and assumes all the liabilities. See W. H. Putegnat Co., Inc. v. Fidelity & Deposit Co. of Maryland, Tex. Com.App., 29 S.W.2d 1004.

Two cases, one a case in the Court of Appeals for the 2nd Circuit, and one in the New York Court of Appeals are persuasive authority for the conclusion we have reached. These are: United States for Use of W. E. Foley & Bro., Inc. v. United States Fidelity & Guaranty Co., 2 Cir., 113 F.2d 888 and Seaboard Surety Co. v. Standard Accident Ins. Co., 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658.

In the Foley case, which was, as is the case here, litigation arising from the default of a subcontractor in the payment for materials used in performance of a government contract, the court said [113 F.2d 889]:

"(1) Although there is no express provision in the contract between Foley and Fiumara that Foley will pay for the material used by him in the work, such a promise is undoubtedly to be implied from his agreement to 'furnish and supply all materials, fixtures, machinery, accessories, etc. to perform all the plumbing and mechanical work necessary * * *.' Hence his failure to pay the Warren Corporation for material incorporated into the work constituted a breach of his contract with the general contractor. Seaboard Surety Co. v. Standard Accident Ins. Co., 277

N.Y. 429, 433, 14 N.E.2d 778, 117 A.L.R. 658."

In the Seaboard Surety case the New York Court of Appeals posed the question, identical with that before us, as follows [277 N.Y. 429, 14 N.E.2d 780]:

"Whether the surety of a subcontractor is liable on its bond to the general contractor for an unpaid bill for materials incorporated in the work under the subcontract made with a general contractor doing building work for the United States government where the subcontractor has failed to complete the work or pay for the material furnished, is the question of law presented."

The Court's opinion then said:

"When the principal, the Interstate Company defaulted on the contract, the breach caused loss to the plaintiff arising out of the necessity for completing the work and the necessity for paying for the materials already incorporated in the work, for which Interstate had failed to make payment. The failure to pay for material incorporated in the work after the subcontractor had undertaken to 'provide all the materials' constituted a breach of the contract with the general contractor. A contract as in the case at bar which requires the contractor to provide material, under any reasonable construction, means that he will pay for the material, and a bond which undertakes to guarantee the faithful performance of such a contract includes within its scope losses suffered because of the failure of the contractor or subcontractor to pay for materials furnished."

On the other hand appellant calls our attention to the Texas case of Standard Accident Ins. Co. v. Knox, 144 Tex. 296, 184 S.W.2d 612, 613 as contrary to what we have decided here. The contract there provided that:

" 'The contractor shall provide adequate workmen's compensation

insurance for labor employed on the project, \* \* \* and shall provide \* \* \* employer's general liability insurance for the benefit of his employees not protected by such compensation laws. \* \* \*' "

The bond in that case, however, specifically guaranteed payment to certain named classes of persons, stating in effect that if the contractor shall faithfully perform his contract, and "shall promptly, well and truly pay all subcontractors, workmen, laborers, mechanics and furnishers of materials all money to them owing by said ——— for subcontracts, work, labor, and material done and furnished for the construction of such improvements \* \* \* " this obligation shall become null and void, etc.

The court, in its opinion, said:

"When we come to construe the contracts between the Housing Authority and the contractor, we are unable to bring ourselves to the conclusion that they, construed by any rule, are subject to the construction that the surety on these Performance Bonds was intended to be bound for the payment of the premiums on the compensation and public liability insurance policies required by such contracts. In reaching this conclusion we have construed all instruments executed by the contractor as one contract. It is true that the contracts require the contractor to furnish compensation and public liability insurance. It is also true that the defeasance clause in the Performance Bonds, in substance, states that if the contractor shall faithfully perform his contract with the Housing Authority, etc. In spite of this, we think that when the contracts are read in the light of the Performance Bonds which are prescribed in detail by the contracts, and are a part thereof, no intention to make the surety on the Performance Bonds liable for the compensation and public liability insurance premiums is shown.

In this regard, we think the Performance Bonds are too specific in repeatedly naming for whose benefit they were made, and who may sue thereon, to admit of such a construction. \* \* \* "

As will be seen, there are several differences between the bond here and the one before the court in the Standard Accident Ins. Co. case. There, since the document was conditioned specifically upon, among other things, the *payment* of certain named persons who might be expected to become creditors, the court would not construe the contract to require payment of others not included in that group. In the documents signed by the contractor, all of which the court construed together, it was repeatedly stated that the contractor would pay a named group; that the agreement was made for the benefit of this named group; or that the same named group could maintain a suit on the bond. Under the doctrine *expressio unius est exclusio alterius* the court understandably found that the parties did not intend to require the payment by the subcontractor of the premiums for the insurance in question as a term of his subcontract.

It is significant, moreover, that the unpaid debt in the Standard Accident case is not of the type that gives rise to a lien against the property to be improved and the unpaid insurance carrier is not therefore one of the class of creditors that contractors' bonds have historically been designed to protect. The payment of such premiums is not directly related to the substance of the work to be done. It thus does not stand in anything like the same relation to the performance of the contract of construction as does payment for the materials or as would payment for labor, which two items are of the very essence of the contract.

In summary, it would be difficult to understand what purpose would be served by the obtaining of a performance bond on a construction job, either where a lien would attach for an unpaid

bill or where the obligee would become liable for such an unpaid bill, unless the bond contemplated that the principal would discharge all such obligations. We hold that the contract between Latimer and Cloer required that out of the contract price the cost of all materials furnished and labor performed should be paid. To the extent that Latimer defaulted in this obligation in his contract, the surety is liable to its obligee Cloer. There is here no question as to the limits of such liability. Cf. Bill Curphy Co. v. Elliott, supra. The surety's obligation is of course limited to the penal sum named in the bond.

Judgment affirmed.