**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Appellant,**

v.

**BREZINA CONSTRUCTION COMPANY, Inc., Appellee.**

**No. 16770.**

United States Court of Appeals Eighth Circuit.

Nov. 1, 1961.

Herbert L. Meschke, Minot, N. D., for appellant, Ilvedson, Pringle, Herigstad & Meschke, Minot, N. D., on the brief.

James L. Lamb, Grand Forks, N. D., for appellee, Degnan, Hager, McElroy & Lamb, Grand Forks, N. D., and John L. Wilds, Rapid City, S. D., on the brief.

Before SANBORN, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

This appeal is from the judgment on a cross-claim in a proceeding instituted under and pursuant to the provisions of Title 40 U.S.C.A. § 270a et seq., commonly known and referred to as the Miller Act.

The case is before us on an agreed statement submitted pursuant to our Rule 10(f), 28 U.S.C.A. From this stipulation it appears that Brezina Construction Company, Inc. (Brezina) and the United States entered into a contract under which Brezina agreed to construct certain housing facilities in North Dakota and Montana. As required by the Miller Act, § 270a(1) and (2) of Title 40 U.S.C.A., Brezina furnished the Government a performance bond and a payment bond with General Insurance Company of America as surety thereon. Subsequently Brezina entered into a contract with A & A Contractors, Inc. (A & A) whereby the latter, as subcontractor, agreed to furnish and install the plumbing and heating in the housing facilities. Pertinent to the instant controversy are these provisions of the contract between Brezina and A & A:

"Section 1. The Subcontractor [A & A] agrees to furnish all material and perform all work as described in Section 2 hereof * * * in accordance with the General Conditions of the Contract between the Owner [United States] and the Contractor and in accordance with Supplementary General Conditions, the drawings and the Specifications prepared by * * *, all of which General Conditions, * * *, form a part of a Contract between the Contractor and the Owner dated, 4 August 1958, and hereby become a part of this Contract.

"Section 2. The Subcontractor and the Contractor agree that the materials to be furnished and work to be done by the Subcontractor are

* * * * * *

"Section 5. * * *

"The Subcontractor agrees—

"(a) To be bound to the Contractor by the terms, of the Agreement, General Conditions of the Contract, the Supplementary General Conditions, * * *, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

* * * * * *

"Section 6.

"The Subcontractor is to furnish a Bond in the full amount of the Contract. * * *."

A & A, as principal, and American Casualty Company (American), as surety, furnished the bond which is the subject of this controversy, whereby they became obligated and bound unto Brezina, as obligee, in the amount of $84,924.[1] The bond furnished by A & A and American, so far as here relevant, provides:

"Whereas the said Principal [A & A] has entered into a written contract with said Obligee * * * for Plumbing and Heating, A C & W Station Family Housing for United States * * *, a copy of which is or may be attached hereto, is by reference made a part hereof, and is hereafter referred to as the Contract.

"Now, Therefore, the Condition of This Obligation Is Such that if the said principal shall conform and comply with the terms and conditions of the contract hereinbefore described, on the part of said Principal to be performed and complied with, then this obligation shall be void, otherwise to be and remain in full force and effect."

A & A failed to pay for materials supplied by Lennox Industries and this action was instituted against A & A, Brezina, American and General Insurance Company of America. Brezina thereafter filed a cross-claim against A & A and American praying that it be awarded

---

1. This was the precise amount which Brezina was obligated to pay A & A under the contract between them.

judgment against them in such sum as the court found Lennox was entitled to recover from Brezina. Judgment was entered in favor of Lennox against A & A, Brezina, and its surety, and in favor of Brezina and against A & A, and its surety, American, on Brezina's cross-claim for $28,328.21 and this appeal was timely perfected and prosecuted by American.

The sole and narrow issue for determination is whether the bond of appellant American Casualty Company indemnified Brezina for any amount which it as prime contractor was required to pay because of A & A's defalcation, that is, its failure to pay for materials furnished to it by third persons. In resolving this issue, the trial court in a memorandum opinion (not officially published) stated: " * * * I conclude that the surety required and contemplated by the subcontract (which is by reference made a part of the bond required under Section 6 thereof), executed pursuant to the provisions of the Miller Act is, in the sense it has been referred to herein, a 'pay bond' in that payment for materials used in the completion of the contract is one of the things which must be 'performed,' as that term has been used."

Succinctly stated, appellant's position is that we are dealing with a "performance" bond which imposed no obligation upon appellant as surety thereon unless A & A failed to "perform and comply" with the terms and conditions of the subcontract; that inasmuch as the subcontract does not in express and explicit language require A & A to pay for materials furnished it and used in the project, the contractual obligation to perform cannot be extended by implication to mean an obligation to pay, and that this is so even though the subcontract did require the subcontractor to "furnish" the materials. It is urged that such a holding is compelled by U. S. for Use of W. B. Young Supply Co. v. Stewart, et al., 8 Cir., 1923, 288 F. 187, certiorari denied 263 U.S. 699, 44 S.Ct. 5, 68 L.Ed. 513, and Crow & Crow, Inc. v. Saint Paul-Mercury Indemnity Co., 247 Minn. 426, 77 N.W.2d 429.

We recognize that in the foregoing cases the court used language which standing alone supports the argument that a contractual obligation to "furnish" materials does not in law constitute an obligation to pay for the same. But when such statements are considered, as they must be, in light of the facts and circumstances presented, it becomes apparent that the cases are distinguishable as to material matters, and thus do not constitute controlling authority for resolution of the issue here presented.

U. S. v. Stewart et al., supra, was an action on a contractor's bond brought against the contractor and his personal sureties for the benefit of a materialman and to recover for materials furnished the contractor.[2] The bond was conditioned on the contractor fully observing and performing all the conditions of the contract executed by Stewart, the contractor.[3] The Court followed our earlier opinion in Babcock & Wilcox et al. v. American Surety Co., 8 Cir., 236 F. 340, decided September 4, 1916, and reannounced the rule that "(a)n obligation to furnish is not an obligation to pay for material that will be furnished." 288 F. at p. 189. In Babcock a materialman proceeded against a contractor and his surety to recover for materials furnished the contractor in connection with the latter's contract with the United States for construction of a public building. The bond required the faithful performance of the contract, and the argument was advanced that as the contract required the contractor to *furnish* materials, this was equivalent to an agreement to pay for the same, and that as the conditions of the bond had been broken, the surety company was liable. This argument was rejected by the Court but, as is made clear by the opinion, the Court attached importance to the fact that the action was brought by a materialman and not by the obligee of the

---

2. The action was under the Heard Acts, 28 Stat. 278; 33 Stat. 811, the predecessors of the Miller Act.

3. Under Stewart's contract he was obligated to furnish the material.

bond. This is made manifest by the statement: "The cases which give the word 'furnish' the broad signification contended for were cases brought by the obligee of the bond, such as the United States in the present action." 236 F. at p. 343. Thus, it appears that this Court in Babcock recognized that where, as here, the obligee brings the action, the bond is not viewed and interpreted narrowly and strictly in favor of the surety as seemed to be the rule in actions brought by materialmen on the bond.

While U. S. v. Stewart et al., supra, was an action by the obligee of the bond, it has been distinguished on the basis that it was brought for the benefit of a materialman, and not for the direct benefit of the obligee as is the situation here. Thus, in Seaboard Surety Co. v. Standard Acc. Ins. Co., 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658, which bears striking resemblance to the instant case, the New York Court of Appeals pointed out the distinction in this language:

"The defendant relies on certain cases in the federal courts as exonerating the defendant from liability on its bond. Babcock & Wilcox v. American Surety Co. of New York, 8 Cir., 236 F. 340; * * * United States v. Stewart, 8 Cir., 288 F. 187, certiorari denied 263 U.S. 699, 44 S.Ct. 5, 68 L.Ed. 513 * * *. None of these cases has bearing on the case at bar, since they were all suits brought either directly by laborers or materialmen, or on behalf of such laborers or materialmen, and not by the obligee on the bond as in the case at bar." 14 N.E.2d at page 782.

In Crow & Crow, Inc. v. Saint Paul-Mercury Indemnity Company, supra, the action was brought by a materialman against the surety of a subcontractor. The contract explicitly required the subcontractor to furnish a "performance" bond. The court therefore concluded

there was no intention to make the materialman a third party beneficiary since the bond was not furnished for his benefit.[4]

■ There is an abundance of persuasive authority that a contract as in the instant case, which requires the contractor to provide material, under a reasonable construction, means that the contractor will pay for the material, and a bond which guarantees faithful performance of such a contract includes within its scope losses suffered because of the failure of the contractor to pay for the materials furnished. Seaboard Surety Co. v. Standard Acc. Ins. Co., supra, stands squarely for this proposition and cites as authority for the rule cases from nine different states. See p. 781 of 14 N.E.2d. Subsequent to Seaboard, which seems to be regarded as the leading authority on the subject, the principle above enunciated has been adhered to and applied in at least four circuits: United States for Use of W. E. Foley & Bro., Inc. v. United States Fidelity & Guaranty Co. et al., 2 Cir., 113 F.2d 888, at p. 889, where the Court stated:

"Although there is no express provision in the contract between Foley [subcontractor] and Fiumara [general contractor] that Foley will pay for the materials used by him in the work, such a promise is undoubtedly to be implied from his agreement to 'furnish and supply all materials' * * *."

Houston Fire & Casualty Ins. Co. v. E. E. Cloer Gen. Con., 5 Cir., 217 F.2d 906; Glens Falls Indemnity Co. v. United States, 9 Cir., 229 F.2d 370; Saint Paul Mercury Indemnity Co. v. Wright Contracting Co., 4 Cir., 250 F.2d 758, and see 43 Am.Jur., Public Works and Contracts, § 154, p. 896; 91 C.J.S. United States, § 110, p. 270. In Saint Paul Mercury Indemnity Co. Judge Parker, in speaking

---

4. It appears that the strict rule of interpretation of these bonds when materialmen were suing thereon had its genesis in the common law concept that no one can maintain an action in his own name upon a contract to which he is not a party, and the rather strict limitation on third party beneficiaries. See Kentucky Rock Asphalt Co. v. Fidelity & Casualty Co., 6 Cir., 37 F.2d 279, 280, 77 A.L.R. 4.

for the Court, pointed out with sound logic that

> "(t)he subcontractor agreed 'to furnish and supply all labor, equipment, fuel, tools, supplies and any and all other facilities whatsoever necessary for doing the hauling' covered by the subcontract. This unquestionably meant to furnish and supply them without liability on the part of the prime contractor to pay for them; and there was a breach of the agreement when there was failure to furnish them in such a way as to protect the prime contractor from such liability." 250 F.2d at p. 760.

The Court also made the pertinent observation that the situation would be different if the person in whose favor the bond runs is under no obligation to pay for the supplies and material furnished and lien therefor cannot be obtained on the property to his detriment,[5] and made this pronouncement:

> "Where, as here, the prime contractor is bound to pay for materials used on the project, whether furnished by himself or a subcontractor, failure of a subcontractor to pay for materials furnished him is in precisely the same category as failure of a contractor to pay for labor or materials giving rise to a laborers' or

materialmen's lien; and it is generally held that loss resulting from such failure and the assertion of such a lien is covered by a performance bond, whether or not payment for labor or materials is expressly required by the bond or contract."

The result for which appellant contends would require a very narrow, strict and technical interpretation of the term "furnish all material" as it appears in the contract.[6] We are in accord with what appears to be the weight of authority and hold that where, as here, the contractor agrees to "furnish all material" necessary to do certain work on a building, he does not comply with and satisfy this requirement by simply placing the material on the ground and leaving it to the owner or, in this case, the prime contractor who is responsible for all material furnished, to pay for it and that implicit in the obligation to "furnish all material" is the promise and agreement to pay therefor. So ruling, the conclusion is impelled that liability attached under the bond because A & A, the principal, failed to "conform and comply with the terms and conditions of the contract."[7]

The judgment is

Affirmed.

---

5. Under the Miller Act, the prime contractor, here Brezina, is required to furnish bond for the protection of all persons supplying labor and material in the prosecution of the work contracted for. Thus Brezina and its surety were liable to Lennox and, as observed, judgment went against them.

6. The rule that the surety is a favorite of the law and that his bond should be strictly construed does not apply to surety companies organized for a profit, or to compensated surety. " * * * the courts, with possibly one or two exceptions, construe the contract of a surety company, acting for compensation, * * most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect; the rule of strictissimi juris, on the ground that sureties are favored in law, has no

application." 50 Am.Jur. Suretyship, § 318, and see 72 C.J.S. Principal and Surety, § 102; 4 Corbin on Contracts, § 800 at p. 176.

7. Under a recognized rule of construction, the instant bond must be viewed and interpreted in light of the provisions of the subcontract and the general contract, which by appropriate reference forms a part of the subcontract. Annotation 77 A.L.R. 46; 72 C.J.S. Principal & Surety, § 100, p. 579; 50 Am.Jur., Suretyship, § 31, p. 923. Consideration of the subcontract and instant bond, in light of the general contract and statute, clearly indicates Brezina's intention to fully protect itself to the extent that it was liable for payment of materials furnished to a subcontractor, and of A & A and its surety to accept this liability.