SUN INSURANCE COMPANY OF NEW YORK, Plaintiff,

v.

DIVERSIFIED ENGINEERS, INC., Marlow Billingsly, d/b/a Billingsly Construction Company, et al., Defendants.

Civ. A. No. 500.

United States District Court
D. Montana,
Billings Division.

April 19, 1965.

---

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for plaintiff.

Berger & Anderson, Billings, Mont., for defendant Diversified Engineers, Inc.

JAMESON, District Judge.

In this interpleader action, plaintiff seeks a judicial determination of the claims of various suppliers of labor and material under a payment bond furnished in connection with a contract awarded to the defendant Diversified Engineers, Inc. for furnishing and erecting a warehouse in Pinedale, Wyoming. Plaintiff, as surety, furnished a payment bond in the amount of $11,208.00 and a performance bond in like amount in favor of the United States, as required by Title 40 U.S.C.A. § 270a et seq.

In its answer and cross-complaint the defendant Diversified Engineers, Inc. alleges that plaintiff is liable to claimants for the amounts of both the performance bond and the payment bond in the

sum of $11,208.00 each, or a total of $22,416.00, or so much as is necessary to discharge in full all legitimate claims. Plaintiff has filed a motion to dismiss the answer and cross-complaint or, in the alternative, to strike those portions relating to plaintiff's alleged liability under the performance bond.

The sole question presented is whether under the Miller Act, 40 U.S.C.A. § 270a et seq., the performance bond, as well as the payment bond, is obligated for payment of amounts due persons supplying labor and material. Briefs have been filed by the respective parties, and neither party has requested oral argument.

The Miller Act provides in pertinent part:

40 U.S.C.A. § 270a.

"(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. * * *

"(b) * * *

"(c) Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section. Aug. 24, 1935, c. 642, § 1, 49 Stat. 793."

40 U.S.C.A. § 270b.

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a *payment bond* is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on *such payment bond* for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: * * *." (Emphasis supplied).[1]

It will be noted that section 270b relating to the "rights of persons furnishing labor or material" refers specifically to the payment bond. There is no reference in this section to the performance bond.

1. Section 270b(b) reads:
"Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him. The United States shall not be liable for the payment of any costs or expenses of any such suit. As amended Aug. 4, 1959, Pub.L. 86–135, § 11, 73 Stat. 279."

The Miller Act, passed in 1935, superseded the Heard Act, Act of August 13, 1894, ch. 280, 28 Stat. 278. The Heard Act provided for one bond for the protection both of the United States and those furnishing labor and material for the prosecution of the work. The Miller Act provides for two bonds—a "performance bond" for the protection of the United States and a "payment bond" for the protection of the suppliers of labor and material. The distinction between the two acts and the history of section 2 of the Miller Act, 40 U.S.C.A. § 270b, were well summarized in United States for use and benefit of Bryant Electric Co. v. Aetna Casualty & Surety Company, 2 Cir. 1962, 297 F.2d 665, 668. The court said in part:

"The Miller Act worked two basic changes in this arrangement: the contractor was required to post two bonds, one protecting the government against failure to perform, the other protecting the subcontractor. The government, being safeguarded by the performance bond, had no direct interest on the payment bond. Each supplier of labor or material was permitted to institute a separate action to recover his claim; the prorata provisions were dropped, creating a race among subcontractors until the bond was exhausted." [2]

As required by the Miller Act, the two bonds issued by plaintiff as surety, with the defendant Diversified Engineers Inc. as principal, name the United States of America as obligee. One bond is designated "performance bond", and the condition of the obligation reads:

"NOW THEREFORE, if the principal shall well and truly perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of said contract during the original term of said contract and any extensions thereof that may be granted by the Government, with or without notice to the surety, and during the life of any guaranty required under the contract, and shall also well and truly perform and fulfill all undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then, this obligation to be void; otherwise to remain in full force and virtue."

The other bond is designated "payment bond", and the condition of the obligation reads:

"NOW THEREFORE if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise to remain in full force and virtue."

The Miller Act "is entitled to a liberal construction and application in order properly to effectuate the Congres-

---

**2.** Mr. Miller in explaining the bill in the House of Representatives said in part:

"This bill merely provides that in the construction of public buildings and other public works there shall be two bonds, one for the performance of the contract with the Government, and the other a payment bond for the protection of subcontractors and those furnishing the labor and material.

"Under the present law we have but one bond, with a dual obligation, but it is not satisfactory in that it does not afford protection to the subcontractors, materialmen and laborers.

"This merely provides for two bonds, one for the protection of the government's interests, and the other for the protection of the rights of labor, the subcontractors, and material furnishers. It permits the filing of a suit on the payment bond 90 days after the work has been done, or the material furnished." Congressional Record, Vol. 79, p. 11702.

sional intent to protect those whose labor and materials go into public projects. * * * But such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds. * * * However inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * Specific terms prevail over the general in the same or another statute which otherwise might be controlling'. Ginsberg & Sons v. Popkin, 285 U.S. 204, 208 [52 S.Ct. 322, 76 L.Ed. 704]." Clifford F. MacEvoy Co. v. United States, for use and benefit of Calvin Tompkins Co., 1944, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163. See also United States, for Benefit and on Behalf of Sherman v. Carter, 1957, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776.

While both of these cases were concerned with limitations in the "payment bond", the same reasoning applies with equal force to the "performance bond", which makes no reference whatever to the payment of persons supplying labor and material, whereas the payment bond specifically provides for their protection.

██ It is well settled that suppliers of material and labor do not have a lien against property of the United States for the amounts due them under the contract. Their right of recovery is against the surety on the payment bond. The Court said in United States v. Munsey Trust Co., 1947, 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022:

" * * * If the United States were obligated to pay laborers and materialmen unpaid by a contractor the surety who discharged that obligation could claim subrogation. But

nothing is more clear than that laborers and materialmen do not have enforceable rights against the United States for their compensation. (citing cases). They cannot acquire a lien on public buildings (citing cases), and as a substitute for that more customary protection, the various statutes were passed which require that a surety guarantee their payment. Of these, the last and the one now in force is the Miller Act * * *.

* * * * * *

"On the contrary, the statutory provisions requiring a separate bond for payment of laborers and materialmen were enacted for their benefit, not to the detriment of the government. It is the surety who is required to take risk. We have no warrant to increase risks of the government." See also Phoenix Indemnity Co. v. Earle, 9 Cir. 1955, 218 F.2d 645.

There is little authority on the precise question here presented. In view of the myriad of Miller Act cases decided in recent years, there may be some significance in the fact that this precise question has not been raised in the reported cases.[3] In an analogous case, however, United States for Use of Edward Hines Lumber Co. v. Kalady Construction Company, N.D.Ill.1964, 227 F. Supp. 1017, the court did permit recovery under the performance bond, and defendant relies primarily upon this case.

In the Kalady case, the court held that wage claims based on violations of the Fair Labor Standards Act would be covered by the performance bond, even though payment of compensation was covered by the payment bond, where there

3. There are cases which, without specifically discussing the performance bond, indicate that the sole remedy of a supplier of material and labor "is on the payment bond". See, for example, United Pacific Insurance Company v. United States, Court of Claims 1963, 319 F.2d 893, 896, where the court also said that the "right of a laborer or materialman to prosecute a suit on the payment bond in

the name of the United States is fully set out in the Miller Act, 40 U.S.C. § 270b(b) (1958), which Act gives the Federal District Courts exclusive jurisdiction". As noted supra, section 270b prescribing when the right to sue arises and the period of limitations, refers specifically to an action under the "payment bond", and makes no reference to the performance bond.

had been an exhaustion of resources under the payment bond and a violation of the contract was involved. The court recognized that the situation was "not expressly covered in the statute or decisions", so that it was "necessary to surmise what Congressional intention would be, in view of Supreme Court decisions." Calling attention to decisions holding that the Miller Act, like the Heard Act "is highly remedial in nature" the court concluded that to deny recovery "would be making the 'two-halves'—the two bonds—less than the whole bond it had been under the Heard Act".[4]

The court in Kalady, as does defendant here, relies strongly on American Casualty Co. of Reading, Pa. v. Brezina Construction Co., 8 Cir. 1961, 295 F.2d 603, and Glens Falls Indemnity Company v. United States of America, etc., 9 Cir. 1956, 229 F.2d 370.

Neither of these cases, however, involved a Miller Act bond. In each case the court construed a performance bond given by a subcontractor to the prime contractor. It was held that the prime contractor was entitled to indemnity from the subcontractor and his surety for materials furnished to the subcontractor in the performance of the contract, and for which both the prime contractor and subcontractor were liable. Particularly in the Brezina case, the court distinguished cases brought either directly by laborers or materialmen, or on their behalf, and not by the obligee on the bond. The court quoted with approval from a decision of the New York Court of Appeals in Seaboard Surety Co. v. Standard Acc. Ins. Co., 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658, where the court said:

"The defendant relies on certain cases in the federal courts as exonerating the defendant from liability on its bond. Babcock & Wilcox v. American Surety Co. of New York, 8 Cir., 236 F. 340; * * * United States [for use of W. B. Young Supply Co.] v. Stewart, 8 Cir., 288 F. 187, certiorari denied 263 U.S. 699, 44 S.Ct. 5, 68 L.Ed. 513 * * *. None of these cases has bearing on the case at bar, since they were all suits brought either directly by laborers or materialmen, or on behalf of such laborers or materialmen, and not by the obligee on the bond as in the case at bar." 295 F.2d at 606.

The same distinction was recognized in St. Paul Mercury Ind. Co. v. Wright Contracting Co., 4 Cir. 1958, 250 F.2d 758, 761, where Chief Judge Parker, after referring to Seaboard Surety Company v. Standard Acc. Ins. Co. said: "As pointed out in the case cited, a different situation would, of course, exist where the person in whose favor the bond runs is under no obligation to pay for supplies furnished and lien therefor cannot be obtained on the property to his detriment, as in * * * United States to Use of Stallings v. Starr, 4 Cir., 20 F.2d 803." [5]

4. In referring to the two bonds under the Miller Act, the court said in part:
    "Legislative history is cited for the enactment, 40 U.S.C. §§ 270a, 270b, which made provision of the *two* bonds in place of the *one* bond theretofore required, as indicative of the Congressional desire to separate the rights of the United States and the rights of the materialmen and laborers. The decisions cited in support of the motion would seem to uphold that construction of the respective sections.
    "On the other hand, the annotations to the statutes reveal a uniform intention of the courts to grant a liberal construction to the statutes." (227 F. Supp. at 1018).

5. Judge Parker also wrote the opinion in United States to Use of Stallings et al. v. Starr, where he said in part:
    "We think that the learned District Judge was correct in holding that the bond in suit did not cover the claims of laborers and materialmen. It is true that on a contract such as this, the Heard Act (Act Feb. 24, 1905, amending Act Aug. 13, 1894, 28 Stat. 278, 33 Stat. 811, U.S.Comp.Stat. § 6923), requires that the bond given for the performance of the contract shall con-

Defendant relies in part upon a statement in an opinion by Judge Parker, United States for Use of Gibson v. Harman, 4 Cir. 1951, 192 F.2d 999, 1000, that the Miller Act, like the Heard Act, "was intended to provide for those who furnish labor and materials for government construction protection analogous to that afforded by mechanics' and material furnishers' liens in the case of private construction". This statement was made, however, in holding that a Miller Act bond, like mechanics' liens, does not cover damages for personal injuries or awards for compensation under workmen's compensation laws. The opinion does recognize clearly the fact that under the Miller Act two bonds are required, "one a 'performance' bond for the protection of the United States, the other a 'payment' bond for the protection of 'persons supplying labor and material in the prosecution of the work' ". I find nothing in the opinion to support the contention that the performance bond is also for the benefit of suppliers of labor and material.

In Pennsylvania Fire Ins. Co. v. American Airlines, Inc., E.D.N.Y.1960, 180 F.Supp. 239, the plaintiff surety, as here, instituted an interpleader action to require various creditors of the contractor to litigate and determine the amounts of their respective claims. The surety had furnished performance and payment bonds in the amounts of $70,070.00. The claims aggregated more than twice that amount. The court held that the interpleader procedure was proper and that the surety's obligation was limited to the face amount of the payment bond. Apparently there was no contention, as here, that the surety was also liable on the performance bond.[6]

■ While Pennsylvania Fire Ins. Co. v. American Airlines Inc. did not pass upon the question here presented, the mere fact that no claim was made under the performance bond suggests a recognition of the fact that recovery on behalf of laborers and materialmen is limited to the payment bond. Certainly the plaintiff here is in a stronger position than the surety in United States to Use of Stallings v. Starr, supra, and similar cases which have denied recovery, in that the Miller Act specifically provides for two bonds—one for the protection of the United States and the other for the protection of suppliers of material and labor.[7] Based upon the plain wording of the Act and its legislative history I cannot escape the conclusion that the suppliers of material and labor are limited to recovery under the payment bond.

tain an obligation guaranteeing the payment of such claims. But this requirement of the statute does not authorize a recovery by laborers and materialmen, where neither the bond itself nor the contract contains such obligation. (Citing cases)."

6. In United States for Use and Benefit of Lichter v. Henke Const. Co., W.D. Mo., 1940, 35 F.Supp. 388, 389, the court held that it did not have jurisdiction over a count wherein a subcontractor sought damages for alleged breach of contract. In referring to the bonds required by the Miller Act, the court said: "Adverting to Section 270a and the various subdivisions thereof, it will be noted that the bond in the instant case was required to be in two parts, (1) a 'performance bond' which ran to the United States and for its benefit and solely 'for the protection of the United States;' (2) a 'payment bond' which was designed to protect 'all persons supplying labor and material in the prosecution of the work provided for in said contract.'
"The statute did not contemplate that the subcontractor would become entitled to a performance bond. That was solely a right running to the United States. The subcontractor could only be protected for the labor and materials supplied by him or them."

7. The applicable rule is stated in 43 Am. Jur. 886, Public Works and Contracts § 144 as follows: "When it is the evident intent of the controlling statute or ordinance requiring execution of different bonds to make each serve a separate and distinct purpose, a bond conditioned to secure the performance of objects specified cannot be made to stand as security for the performance of the obligations of the other."

■■ It is recognized that motions to strike are not favored and should not be granted unless it is clear that the matters stricken have no possible relationship to the controversy and may prejudice the other party. 2 Moore's Federal Practice p. 2317, § 12.21; 1 Barron & Holtzoff, Federal Practice and Procedure, § 367. Where, however it appears that the defense pleaded might confuse the issues and would not under any facts proved in support of the allegations constitute a valid defense, a motion to strike may properly be granted. Goldberg v. Amalgamated Local Union No. 355, E.D.N.Y.1962, 202 F.Supp. 844, 846. See also Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir. 1954, 214 F.2d 891, 894, cert. den. 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715; Jones v. Thunderbird Transportation Company, D.Kan.1959, 178 F.Supp. 9, 11.

The motion to strike is granted.