UNITED STATES of America, f/u/o EDWARD HINES LUMBER COMPANY, a corporation, and f/u/o James Healy and Donald Healy, a partnership d/b/a Healy Tile Company, and f/u/o James Woodson, James Krug, Michael Koban and John Kaflin a/k/a John Kariofili a/k/a Yani Kariofili, Plaintiffs,

v.

KALADY CONSTRUCTION COMPANY, Inc., an Illinois corporation, Firemen's Insurance Company of Newark, New Jersey, a New Jersey corporation, and Joseph Kalady, individually, Defendants.

No. 63 C 1091.

United States District Court
N. D. Illinois, E. D.

March 24, 1964.

Brodl & Daugherty, Chicago, Ill., for plaintiff Edward Hines Lumber Co.

Amberg & LaBar, Chicago, Ill., for defendant Firemen's Ins. Co. of Newark, N. J.

Ruff & Grotefeld, Chicago, Ill., for intervening petitioners James Healy and Donald Healy, d/b/a Healy Tile Co.

Schwartz & Zaban, Chicago, Ill., for intervening petitioners James Woodson, James Krug, Michael Koban and John Kaflin a/k/a John Kariofili a/k/a Yani Kariofili.

William E. Gainer, Chicago, Ill., for intervening petitioner Schnakenberg Ace Hardware, Inc.

Jacobs, Ribstein & Lieberman, Chicago, Ill., for Joseph Cardinal, d/b/a Avenue Electric Company, intervening petitioner.

ROBSON, District Judge.

Defendant Firemen's Insurance Company of Newark, New Jersey's Motion to Dismiss Count II of the Complaint of James Woodson, et al., is predicated on the assertion that recovery is sought on a *"performance"* bond to the United States, whereas recovery for compensation may be had *solely* from the *"payment"* bond to the United States, irrespective of the fact that the fund provided for the payment of wages by the "payment" bond is insufficient to meet the obligations incurred.

Movant's brief cites the fact that the obligee in the "performance" bond is *solely* the United States, to which plaintiffs respond, so also is the obligee in the "payment" bond. This reply is answered with the showing that the "payment" bond *specifically* is conditioned to cover compensation of workers. Legislative history is cited for the enactment, 40 U.S.C. §§ 270a, 270b, which made provision of the *two* bonds in place of the *one* bond theretofore required, as indicative of the Congressional desire to separate the rights of the United States and the rights of the materialmen and laborers. The decisions cited in support of the motion would seem to uphold that construction of the respective sections.

On the other hand, the annotations to the statutes reveal a uniform intention of the courts to grant a liberal construction to the statutes.

By the circuitous route of "reference by incorporation" the "performance bond" could be deemed to cover the obligation to pay salaries. The performance bond provided:

"The Condition of this obligation is such, that whereas the principal [Kalady Construction Co.] entered into a certain contract with the Government * * * *if the principal shall well and truly perform and fulfill all the undertakings,* covenants, terms, conditions, and agreements *of said contract* * * * this obligation * * * [shall] be void." (Emphasis ours.)

The "construction contract" provided, *inter alia,* that the United States and the contractor "mutually agree to perform this contract in strict accordance with the General Provisions (Standard Form 23-A), Labor Standards Provisions Applicable to Contracts in Excess of $2,000. * * * *"

The "Labor Standards Provisions" provides in part, pursuant to statute, that:

"All mechanics and laborers employed or working directly upon the site of the work *will be paid unconditionally* and not less often than once a week * * * *the full*

*amounts* due at time of payment, *computed at wage rates not less than those contained in the wage determination decision of the Secretary of Labor which is attached hereto and made a part hereof,* regardless of any contractual relationship which may be alleged to exist between the Contractor or subcontractor and such laborers and mechanics; and a copy of the wage determination decision shall be kept posted by the Contractor at the site of the work in a prominent place where it can be easily seen by the workers.

"In the event it is found by the Contracting Officer that any laborer or mechanic employed by the Contractor or any subcontractor directly on the site of the work covered by this contract has been or is being paid at a rate of wages less than the rate of wages required by paragraph (a) of this clause, the Contracting Officer may * * * (b) by written notice to the Government Prime Contractor terminate his right to proceed with the work, or such part of the work as to which there has been a failure to pay said required wages. * * *

"There may be withheld from the Contractor so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics employed by the Contractor or any subcontractor the full amount of wages required by this contract. In the event of failure to pay any laborer or mechanic all or part of the wages required by this contract, the Contracting Officer may take such action as may be necessary to cause the suspension, until such violations have ceased, of any further payment, advance, or guarantee of funds to or for the Government Prime Contractor. * * *

"The Contractor agrees to insert [above provisions] * * * in all subcontracts. * * * *" (Emphasis ours.)

Letters from the District Public Works Office, Ninth Naval District appended to the complaint, to the respective plaintiffs state, in part:

"A review of the contractor's compliance with the Federal labor standards provisions of his contract appears to indicate that restitution wages *are due* you for work. * * *" (Emphasis ours.)

The complaint states that the right to restitution arises because of violations of the Fair Labor Standards Act. The letters from the Naval District Office indicate these sums due the respective plaintiffs:

| | | |
|---|---|---|
| Woodson | – | $1,961.00 |
| Koban | – | 1,111.69 |
| Krug | – | 685.00 |
| Kariofili | – | 2,922.00 |

The Kalady Construction Company, Inc., the prime contractor, in 1961, entered into a contract with the Government to enlarge the Enlisted Men's Club Facilities at Great Lakes, and furnished a Miller Act Performance Bond in the amount of $20,902.92 and a Miller Act Payment Bond in the amount of $10,-451.46, on both of which bonds the Firemen's Insurance Company of Newark, New Jersey, was the surety. The work was completed but the contractor was in financial difficulties and failed to pay the subcontractors and suppliers.

[1] The briefs of the parties have correctly indicated the Congressional intent, in the enactment of the Miller Act, as to the splitting of the single bond theretofore given on Government contracts into two bonds, such as given here, one for payment, and one for performance. The reason for the splitting was to enable laborers and materialmen to secure immediate relief where there was nonpayment for labor and materials and overcome their having to be postponed in their remedy as theretofore until after the United States was made whole.

The instant situation is not expressly covered in the statute or decisions so that it is necessary to surmise what Con-

gressional intention would be, in view of Supreme Court decisions. In Pearlman v. Reliance Ins. Co., 371 U.S. 132, at 139, 83 S.Ct. 232, at 236, 9 L.Ed.2d 190, the Supreme Court said:

"It is argued that the Miller Act changed the law as declared in the Prairie Bank [Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412] and Henningsen [Henningsen v. United States F. & G. Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547] cases. We think not. Certainly no language of the Act does, and we have been pointed to no legislative history that indicates such a purpose. The suggestion is, however, that a congressional purpose to repudiate the equitable doctrine of the two cases should be implied from the fact that the Miller Act required a public contract surety to execute two bonds instead of the one formerly required. It is true that the Miller Act did require both a performance bond and an additional payment bond, that is, one to assure completion of the contract and one to assure payments by the contractor for materials and labor. But the prior Acts on this subject, while requiring only one bond, made it cover both performance and payment. Neither this slight difference in the new and the old Acts nor any other argument presented persuades us that Congress in passing the Miller Act intended to repudiate equitable principles so deeply inbedded in our commercial practices, our economy, and our law as those spelled out in the Prairie Bank and Henningsen cases."

In MacEvoy Co. v. United States, etc., 322 U.S. 102, at 107, 64 S.Ct. 890, at 893, 88 L.Ed. 1163, the Supreme Court said:

"The Miller Act, like the Heard Act, is *highly remedial* in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go in to public projects. * * * *" (Emphasis ours.)

There are two enlightening decisions (cited by neither side) on suits on these respective bonds. In American Casualty Co. of Reading, Pa. v. Brezina Construction Co., 295 F.2d 603 (8th Cir. 1961), there was an action under the Miller Act by a supplier of material to a subcontractor against sureties to recover for materials furnished. The Court of Appeals held that the subcontractor, by undertaking to "furnish all material" implicitly agreed, thereby, to pay for such material. Therefore, the subcontractor's surety was required to indemnify the prime contractor for the subcontractor's defalcation in *failing to pay* third-party supplier of materials used by the subcontractor, as against the contention of the subcontractor's surety that its bond was merely a "performance" bond, imposing no obligation for subcontractor's failure to pay for material used. The Court said:

"* * * [T]he conclusion is impelled that liability attached under the bond because A & A, the principal, failed to 'conform and comply with the terms and *conditions of the contract.'*" (Emphasis ours.)

In Glens Falls Indemnity Company v. United States of America, etc., 229 F.2d 370 (9th Cir. 1955), an action was brought by an electrical supplier against the prime contractor and subcontractor and their sureties to recover the unpaid balance due from the subcontractor for materials furnished. The Court there held that the failure promptly to pay for materials furnished was just as much a breach of the *performance* of the contract as if the work specified in the contract had not been completed, and that the surety was liable for the failure to pay for the materials under "the *performance bond as well as under the payment bond.*" (Emphasis ours.)

Inasmuch as Count II on the "performance" bond raises a violation of the *contract* it was given to secure, albeit

in respect to the payment of compensation, which is *also* covered by the "payment" bond, and since there has been an exhaustion of resources under the payment bond, these claimants should have recourse against the performance bond. Their claims fall within the obligations specified in the contract covered by the performance bond. Any other conclusion would not be granting the bonds given under the Act, and the Act the "highly remedial" interpretation Congress is said to have intended. It would be making the "two-halves"—the two bonds—less than the whole bond it had been under the Heard Act.

The motion to dismiss Count II of the complaint is denied.