**UNITED STATES FIDELITY AND GUARANTY COMPANY**

v.

**A & A MACHINE SHOP, INC., et al.**

Civ. A. No. 69–H–767.

United States District Court,
S. D. Texas,
Houston Division.

Aug. 27, 1971.

Tom Connally, Fulbright, Crooker & Jaworski, Houston, Tex., for plaintiff.

Ray A. Gipson, Baker & Botts, Houston, Tex., for defendant Natkin & Co.

John D. Anderson, LaMarque, Tex., for defendant A & A Machine Shop, Inc.

S. P. Wunsch, Houston, Tex., for defendant B. N. Adams Electric Co.

Dale Ledbetter, Segrato & Ledbetter, Houston, Tex., for defendant Anderson Kahmann d/b/a Allen Aircraft Supply Co.

Mark W. White, Jr., Reynolds, White, Allen & Cook, Houston, Tex., for defendants Kinetics, Inc. and Wallace Co., Inc.

Patterson, McDaniel & Browder, Houston, Tex., for defendant Moncrief Lenore Mfg. Co., Inc.

Donald G. Gay, Dallas, Tex., for defendant Van Waters & Rogers.

W. A. Thurmond, Scott, Hulse, Marshall & Feuville, El Paso, Tex., for defendant Whitfield Transportation, Inc.

MEMORANDUM AND ORDER

BUE, District Judge.

The United States of America entered into a contract with Hydro-Tech, Inc., plaintiff's principal, for the construction of an oxygen distribution control panel and ESC system piping. Pursuant to the Miller Act, 40 U.S.C. § 270a et seq., United States Fidelity & Guaranty Company [hereinafter referred to as U.S.F. & G.] issued its payment bond as well as its performance bond naming Hydro-Tech as principal and the United States of America as obligee.

Hydro-Tech completed the contract, and the work was accepted by the government; however, some of the materialmen and subcontractors were not paid. Hydro-Tech's surety, U.S.F. & G., filed this interpleader naming as defendants all of those persons, firms, or corpora-

tions which might have some claim against the prime contractor arising out of the bonded project, due to the fact that the total amount of the claims filed exceeded the penal amount of the payment bond. The statute of limitations has run, barring any future claims, 40 U.S.C. § 270b.

The sum of $79,000, the penal amount of U.S.F. & G.'s payment bond, has been deposited in the Registry of the Court, which sum the surety contends is the limit of its liability. Defendants, by answer and cross-action, urge that U.S.F. & G.'s liability exceeds the penalty of the payment bond and extends to the penalty of the performance bond. The question presented here, on plaintiff's motion for partial summary judgment, is whether under the Miller Act both the performance and payment bonds are obligated for sums due persons who have furnished labor or materials to the bonded job. The applicable law has been ably researched and persuasively presented by counsel in numerous briefs on file.

The relevant sections of the Miller Act provide:

40 U.S.C. § 270a.

(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractors':

(1) A *performance bond* with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

(2) A *payment bond* with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. (emphasis supplied)

\* \* \* \* \* \*

Section 270b—

(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him. \* \* \*

The surety urges that its obligations and liabilities under the two Miller Act bonds are separate and exclusive. The performance bond, it is urged, is "for the protection of the United States" and the payment bond is "for the protection of all persons supplying labor and materials in the prosecution of the work." Thus, once the prime contractor as principal under the bond has performed all of the terms and conditions of the contract, which performance has been accepted by the government, the obligations of the surety under the performance bond are henceforth waived.

Defendant, Natkin & Co., Inc., in opposing plaintiff's motion, alleges that it is legally entitled to recover from the performance bond the amount due in excess of its pro rata share of the payment bond. To that effect, Natkin urges two theories of recovery. First, the prime contractor, in contracting to furnish all labor and materials necessary to perform the contract, also promised to *pay* for such labor and materials. Since the prime did not pay for certain labor and materials and since that performance was provided by Natkin, Natkin states

that it is equitably subrogated to the government's right against the prime and its performance bond. Second, Natkin asserts its right as a third party beneficiary of the contract between the United States and the prime and its surety, including the performance bond.

There is authority for the principle that all contractual instruments between the prime contractor and the government be construed together in ascertaining the obligations which run thereunder. Thus, it has been held that government contracts for federal construction projects require payment of subcontractors, failure to pay constituting a failure to perform and a breach of the contract. Martin v. National Surety Co., 300 U.S. 588, 595, 57 S.Ct. 531, 81 L.Ed. 822 (1937); Fireman's Fund Insurance Co. v. United States, 421 F.2d 706, 708–709, 190 Ct.Cl. 804 (1970); Continental Casualty Co. v. United States, 169 F.Supp. 945, 145 Ct. Cl. 99 (1959).

Since Hydro-Tech breached the contract by failure to pay its subcontractors and Natkin fulfilled the breach in part, that is, absorbed its own costs of labor and material, it is urged that Natkin is subrogated to the rights of the United States against the prime contractor's surety and its performance bond. These rights, Natkin urges, are those which would have accrued to the government and formed a basis for recovery under the performance bond if Natkin had not filled Hydro-Tech's breach. To this effect, counsel for Natkin cite considerable authority. *See e. g.* Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547 (1907); Prairie State National Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896); Continental Casualty Co. v. United States, 169 F.Supp. 945, 145 Ct.Cl. 99 (1959); National Surety Corp. v. United States, 133 F. Supp. 381, 132 Ct.Cl. 724 (1955); Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). These cases have made no distinction as to whether such performance resulted from doing the work on the job or in paying subcontractors. However, this Court finds two important distinctions between the line of cases cited by Natkin and the instant case. First, the present case involves the claim of a *subcontractor* to be subrogated to the rights of the United States. Yet Natkin, in performing its subcontract—completing the project and making payment for labor and material connected therewith—merely did that which it had contracted to do. It would be difficult to find that Natkin had assumed the obligation of the prime contractor when, in fact, Natkin was already under an obligation to perform. Indeed, the cases cited do not compel such a finding. Rather, they involve the claims of a *surety* of the *prime contractor* found to be subrogated by discharging the obligations of its principal. Second, in each instance cited by the defendant, the surety claims were to the retainage, a term characterizing funds owed under the contract but withheld by the government. Not one of these cases extends the subrogation theory to the proceeds of the performance bond.

A case directly in point, United States v. Ardelt-Horn Construction Co., 316 F. Supp. 254, 260 (D.Neb.1970), aff'd, 446 F.2d 820 (8th Cir., 1971), makes the following exposition and analysis:

> The present case does not involve a claim to withheld funds. This difference is significant because withheld funds are peculiarly related to the failure of the general contractor to pay the subcontractor; a performance bond, on the other hand, is not so directly related to that failure. The withheld fund is created because of the failure;. the performance bond existed before the failure and its wording gives no impression that it was given in contemplation of a possible failure to pay suppliers. The principle of the *Continental Casualty Company* case and the *Pearlman* case does not become activated with respect to a performance bond. Additionally, the claim in the present case is not by a surety, but by a subcontractor.
>
> * * * [Neither Continental nor Pearlman] suggested that the *subcontractor* was subrogated to the rights

of the United States to those withheld funds.

Inasmuch as *Ardelt-Horn* was on appeal, it seemed advisable to withhold the opinion in the present case pending appellate review. In affirming the District Court decision, the Court of Appeals for the Eighth Circuit noted with approval the reasoning and review of authorities of that Court, reiterating the following:

> As pointed out by Judge Urbom, Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190, and other cases cited by the plaintiff dealing with the right of a surety satisfying the obligation of the subcontractor to be subrogated to rights of the prime contractor to funds withheld by the government with respect to which the government makes no conflicting claim, falls far short of supporting the view that a subcontractor paying for labor and material on a government project is subrogated to the rights of the government on the performance bond. *See* Sun Insurance Co. of New York v. Diversified Engineers, Inc., D.C.Mont., 240 F.Supp. 606.

■ Defendant Natkin, unconcerned with the fact that it is claiming against an entirely different fund, that is, the performance bond rather than retained funds, states that the significant difference in this case is simply that there has been no equitable assignment or subrogation of the subcontractor's right to the surety because the surety has not paid the subcontractor. Thus, it is urged, the equitable rights remain in the subcontractors who absorbed the costs of their own labor and materials. But looking behind theories to realities, it appears much more logical to this Court that Natkin merely performed as required in order to satisfy its own contractual obligations and also to avoid any possible liability to its prime for breach of contract; it did not perform in order to discharge the obligations of its prime contractor to the government so as to become subrogated to the government's rights against such contractor's surety and its performance bond.

In short, Natkin did not discharge the debt of another; it discharged its own contractual obligations and no more. I find the *Ardelt-Horn* case to state the correct legal principle and to be dispositive of this issue.

A case analogous to the instant case, United States v. Kalady Construction Co., 227 F.Supp. 1017 (N.D.Ill.1964), by construing the terms of the contract and the bond issued thereunder in concert, held that the claims of *laborers* could be satisfied out of the performance bond in a Miller Act construction contract. Plaintiff U.S.F. & G. here seeks to distinguish the *Kalady* case, in that the contract involved there contained a specific covenant requiring payment of mechanics and laborers with the performance bond conditioned on the fulfillment of all covenants. Although the contract in the instant case contains similar provisions for the protection of mechanics and laborers, such provisions *do not* relate to *subcontractors* and materialmen.

Although I am inclined to agree that this distinction is valid, I find it unnecessary to rely upon it. Instead, I am persuaded to follow the *Ardelt-Horn* decision and to reject any application of the reasoning of *Kalady* to this case because the former rationale much more closely effects the public policies sought to be furthered by the Miller Act. An excellent review of the Heard Act which preceded the Miller Act, the changes in bond requirements accomplished under the Miller Act, and the legislative history is provided by Judge Urbom in the *Ardelt-Horn* case, 316 F.Supp. at 262–263. This history, absorbed in the light of the specific language of the Miller Act, convinces me that the Act intentionally, and wisely I believe, "provides for two bonds, one for the protection of the Government's interests, and the other for the protection of the rights of labor, the subcontractors, and material furnishers." 316 F. Supp. at 263, citing from the Legislative History of the Miller Act as recorded in MacEvoy Co. v. United States, 322 U.S. 102, 109 n. 9, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). Thus, while the Heard Act contained provisions for but

one bond in protection of all claims, the separate requirements for performance and payment bonds under the Miller Act were instituted to prevent the delay and hardship which had been the practical result of the dual purpose bond previously required. To accept Natkin's thesis would serve, in effect, to inject a dual purpose into the performance bond, thereby reverting in large measure to the status of the law existing under the Heard Act. As was pointed out in *Ardelt-Horn,* 316 F.Supp. at 263:

> ▮t is difficult to believe that the framers of the Miller Act would give to the suppliers of labor and materials rights on the performance bond without mentioning the subject of priorities between those suppliers and the United States, a subject so specifically covered by the wording of the Heard Act.

The Court in *MacEvoy, supra,* placed the proper perspective upon liberal interpretations of specific language. The Court stated:

> The Miller Act, like the Heard Act, is highly remedial in nature. It is entitled to a liberal construction and application in order to properly effectuate the Congressional intent to protect those whose labor and materials go into public projects. ˙ * * * But such a salutary policy does not justify ignoring plain words of limitation and imposing wholesale liability on payment bonds. * * * However inclusive may be the general language of a statute, it "will not be held to apply to a matter specifically dealt with in another part of the same enactment. * * * Specific terms prevail over the general in the same or another statute which otherwise might be controlling."

322 U.S. at 107, 64 S.Ct. at 893.

▮ Additionally, defendant Natkin asserts that it is a third party beneficiary of the contract between the United States and the prime contractor. In analyzing this theory, the Court must determine the intent of the contracting parties as to who should benefit from the performance bond. This discussion on public policy contained in *Ardelt-Horn* clearly shows that the intent of Congress was to provide the performance bond for the protection of a government interest as opposed to subcontractors, materialmen and laborers who were protected under the payment bond. Moreover, the cases cited by Natkin supporting a third party beneficiary theory involved instances in which there was no payment bond specifically written for the benefit of subcontractors and materialmen. Thus, unlike the instant case, there was a strong public policy interest in having laborers and materialmen protected under the performance bond in the cited authorities. *See, e. g.,* Acoustics, Inc. v. American Surety Co., 74 Nev. 6, 320 P.2d 626 (1958); Hollerman Manufacturing Co. v. Standard Accident Insurance Co., 61 N.D. 637, 239 N.W. 741 (1931); United States Fidelity & Guaranty Co. v. Henderson County, 276 S.W. 203 (Tex. Com.App.1925).

For the reasons stated in this Memorandum and Order, including the authorities cited to in *Ardelt-Horn,* this Court is persuaded that, as no genuine issues of material fact are present, plaintiff is entitled to partial summary judgment as a matter of law, and that defendants' and cross-plaintiffs' recovery should be limited to the $79,000 penalty of the payment bond which has previously been deposited in the Registry of the Court, together with any interest accruing upon that sum since its deposit. Accordingly, those pleadings seeking recovery under the performance bond are hereby stricken, and plaintiff's motion for partial summary judgment is granted. It is so ordered.