UNITED STATES of America for the Use and Benefit of BLOUNT FABRICATORS, INC., Plaintiff,

v.

PITT GENERAL CONTRACTORS, INC., and Edgar L. Powell and Richard F. Keyworth, Defendants.

Richard F. KEYWORTH and Edgar L. Powell, Cross–Plaintiffs,

v.

PITT GENERAL CONTRACTORS, INC., Cross–Defendant.

Richard F. KEYWORTH and Edgar L. Powell, Third–Party Plaintiffs,

v.

Jerome A. PITTMAN and Minerva Banks, Third–Party Defendants.

No. Civ. 3–89–507.

United States District Court, E.D. Tennessee, N.D.

Feb. 15, 1991.

John T. McArthur, Kizer & Black, Maryville, Tenn., for plaintiff.

Ronald L. Grimm, Stephen K. Garrett, Ambrose, Wilson, Grimm & Durand, Knoxville, Tenn., for Richard F. Keyworth and Edward L. Powell.

## MEMORANDUM OPINION

ROBERT P. MURRIAN, United States Magistrate Judge.

This case came before the undersigned on February 7, 1991, for trial without a jury and pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P.

This is an action under 40 U.S.C. § 270b to recover on bonds given under 40 U.S.C. § 270a by a contractor engaged in the construction, alteration, or repair of a public building or public work of the United States. Jurisdiction is predicated upon 28 U.S.C. § 1331, and is not in dispute.

The use plaintiff Blount Fabricators, Inc. ("Blount") claims that on September 14, 1988, the defendant Pitt General Contractors, Inc., entered into U.S. Government Contract Number V621C–386 for the reinforcement of warehouse floors at the Veterans Administration Medical Center at Johnson City, Tennessee; that, pursuant to 40 U.S.C. § 270a(a)(1), Pitt General Contractors, Inc. ("Pitt"), as the principal, and the defendants Edgar L. Powell and Richard F. Keyworth, as sureties, executed and delivered their payment bonds to the United States of America in reference to this contract, binding themselves jointly and severally for the payment of all persons having a direct relationship with the principal or with a subcontractor of the principal for furnishing labor, material or both in the prosecution of the work provided for in U.S. Government Contract Number V621C–386; that the "penal sum" of the bond was $21,210.95; that pursuant to 40 U.S.C. § 270a(a)(2), Pitt as the principal and Messrs. Powell and Keyworth as the sureties, executed and delivered their performance bonds to the United States, binding themselves jointly and severally for performance of the contract; that the "penal sum" on the performance bond was $42,-421.91; that Blount entered into a subcontract with the defendant Pitt in reference to the contract under which Blount agreed to provide all materials and labor necessary to fabricate aluminum tread plates to reinforce the warehouse floor pursuant to the contract; and that Blount has performed all of its obligations owed to the defendant Pitt under this contract. It is not disputed that Blount has not been paid for any of its work on the job.

On January 10, 1991, summary judgment entered in Blount's favor and against Pitt for the full amount of the subcontract ($40,018.35), plus interest in the amount of $6,333.00 for a total amount of $46,351.00 [Doc. 42]. Blount has not been paid any of this amount by Pitt.

Messrs. Powell and Keyworth claim that the liability of both defendants, if any, is limited to the face amount of the payment bond ($21,210.95) and that they have no obligation to Blount under the performance bond.

Messrs. Powell and Keyworth filed a cross-claim against Pitt for indemnification based upon a general indemnification agreement.

Messrs. Powell and Keyworth filed a third-party claim against Jerome A. Pittman and Minerva Banks, corporate officers of Pitt, based on that same general indemnification agreement.

There is no doubt that Blount, as a subcontractor on this project has the right to sue on the payment bond. 40 U.S.C. § 270b(a). Furthermore, Blount is entitled to judgment against Messrs. Powell and Keyworth, jointly and severally, for the amount of the payment bond. The difficult question is whether or not Blount is also entitled to recover under the performance bond as well.

Blount argues that Pitt failed to perform an obligation it had under the contract with the United States; that Blount now stands in the shoes of the United States or is a third-party beneficiary of Pitt's promise to the United States to pay Pitt's subcontractors; and that Blount is entitled to recover against Messrs. Powell and Keyworth be-

cause they agreed to be sureties on Pitt's performance of the contract with the United States.

Blount relies upon the following contract provision in support of its argument:

> The Contractor, prior to receiving a progress or final payment under this contract, shall submit to the Contracting Officer a certification that the Contractor has made payment from proceeds of prior payments, or that timely payment will be made from the proceeds of the progress or final payment then due, to subcontractors and suppliers in accordance with the contractual arrangements with them.

This certification was made by Jerome A. Pittman on January 31, 1989, as Pitt's chief executive officer. He claimed the contract price of $42,421.91 and certified that

> I have made payment from proceeds of prior payments and I will make timely payment from the proceeds of the final payment now due to my subcontractors and suppliers in accordance with contractual arrangements with them.

Exhibit 7. Mr. Pittman was paid for the job by the United States in full but has not kept his promise to pay Blount. He and Blount agreed that the latter would be paid when Pitt was paid. He nor Pitt has ever paid Blount any of the amount owing under the subcontract ($40,018.35 plus interest).

Blount also points to the following provision in the original contract between the United States and Pitt:

> 1.31 PAYMENT UNDER FIXED–PRICE CONSTRUCTION CONTRACTS (VAAR 852.236–82) (APR 1984)
>
> The clause entitled "Payments Under Fixed–Price Construction Contracts" in FAR 52.232.5 is implemented as follows:
>
> (a) retainage:
>
> (1) The contracting officer may retain funds:
>
> (i) Where performance under the contract has been determined to be deficient or the Contractor has per-

formed in an unsatisfactory manner in the past. . . .

> \* \* \* \* \* \*
>
> (2) Examples of deficient performance justifying a retention of funds include, but are not restricted to, the following:
>
> \* \* \* \* \* \*
>
> (D) Failure to comply in good faith with approved subcontracting plans, certifications or contract requirements.

Exhibit 1 at p. 01001–18.

Retainage may not exceed 10% of the contract price and "[r]etained amounts shall be paid promptly upon completion of all contract requirements. . . ." *Id.* at p. 01001–18. No retainage was withheld in this case.

Blount argues that Pitt's failure to comply with the certification Mr. Pittman gave on Pitt's behalf amounts to deficient performance for which Pitt and its sureties, Messrs. Powell and Keyworth, are liable under the performance bond.

■ I agree with the Court in the case of *United States ex rel. James E. Simon Co. v. Ardelt–Horn Construction Co.,* 316 F.Supp. 254 (N.D.Neb.1970), *aff'd per curiam,* 446 F.2d 820 (8th Cir.1971), *cert. denied,* 404 U.S. 1060, 92 S.Ct. 740, 30 L.Ed.2d 747 (1972) ("Ardelt–Horn") that

> [t]he pivotal issue is whether the United States, the general contractor, and the surety intended that a supplier of labor and material under a subcontract be a beneficiary of the performance bond.

316 F.Supp. at 257. In that case, the answer was "no." The principle stated there, however, is consistent with the following from the Restatement of the Law of Security, § 165, p. 457:

> Where a surety for a contractor on a construction contract . . . guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety's contract, unless the surety's contract disclaims liability to such persons.[1]

---

**1.** Comment a states: "The rule stated in this section applies to both governmental and pri- vate contracts."

■ Federal law, as opposed to state law, governs in this case. The scope of the remedy and the substance of the rights created by the Miller Act are matters of federal law. *F.D. Rich Co. v. United States ex rel Industrial Lumber Co.*, 417 U.S. 116, 127, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

The first critical question in the instant case is whether or not Messrs. Powell and Keyworth guaranteed to the owner (the United States) any promise of Pitt to pay for labor and materials. As was stated above, Mr. Pittman, on Pitt's behalf, promised in writing that Pitt would pay its subcontractors and suppliers what it owed them out of the proceeds of the $42,421.91 lump sum payment. Pitt had to do this as a condition precedent to being paid for the job because the contract between the United States and Pitt required such a certification.

■ Thus, there was clearly a promise by Pitt to the United States that Pitt would pay its subcontractors and suppliers what Pitt owed them out of the contract proceeds.

The next critical question is whether or not Messrs. Powell and Keyworth guaranteed that promise. I find that they did. The performance bonds state that the bonds will be void if Pitt "[p]erforms and fulfills *all* the undertakings, covenants, terms, conditions, and agreements of the contract...." Exhs. 5 and 6 (emphasis added). It was a covenant or undertaking of the contract between the United States and Pitt that Pitt would promise to pay subcontractors like Blount what was owed them out of the proceeds of the lump sum payment to Pitt in return for Pitt being paid. There can be no doubt that subcontractors and suppliers like Blount were the intended beneficiaries of that promise. It certainly was not intended to benefit the United States because it never had any liability to Blount or any other laborer or materialman on the job. *United States v. Munsey Trust Co.*, 332 U.S. 234, 241, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947). The

surety's contract did not disclaim liability to subcontractors like Blount.

I cannot agree with the sureties' argument that once Pitt made the promise to pay subcontractors, it had fully performed under the contract. The promise was given in return for the lump sum payment. The subcontractors were clearly the intended beneficiaries, the promise was guaranteed by the sureties, and is enforceable against them by the third-party beneficiaries.

The following illustration from § 165 of the Restatement of the Law of Security is instructive:

1. The A Construction Company contracts with the city of X for the building of a retaining wall in a park. In the construction contract the company makes no promise to the city to pay laborers and materialmen. In connection with the contract, the company furnishes the obligation of S, a surety, in the penal sum of $10,000 guaranteeing that the company will satisfactorily complete the work and will pay all valid claims for labor and materials. S is liable to unpaid laborers, materialmen, and subcontractors.

2. Same facts as Illustration 1, *except that the company promises the city it will pay laborers and materialmen. S guarantees that the company will perform its contract, without specially mentioning the various promises and duties of the company. S is liable to unpaid laborers, materialmen, and subcontractors.*

Emphasis added. In this case, Pitt ("the company") promised the United States ("the city") that it would pay subcontractors (like Blount). This promise was part and parcel of the original contract between the United States and Pitt because Pitt could not be paid for the job until it made that promise. The second illustration appears to fit the facts of this case squarely.

■ I recognize that § 270b of the Miller Act discusses recovery under the payment bond for those who have provided labor and materials on a job.[2] This does not

---

**2.** The legislative history of the Miller Act reveals that the securing of a payment bond and per-

formance bond is required in order to reduce delay in enforcement of subcontractor's rights.

mean that Blount does not have any rights under the performance bond, however. None of the cases which I have reviewed state that a subcontractor like Blount cannot be a third-party beneficiary of a promise that the general contractor makes to an owner like the United States to pay those who subcontract or provide labor and materials on a Miller Act job and that the general contractor's sureties cannot guarantee such a promise.

In *Ardelt–Horn* the court held *inter alia* that "[i]n order to hold that the parties to the performance bond and the contract referred to in it intended that the suppliers of labor and material were to be beneficiaries of the performance bond, a clearer expression of it should exist than appears in the documents here involved." 316 F.Supp. at 263. That case turns on what the documents stated as does this case. In the present case, I find that the documents express an intention on the part of Messrs. Powell and Keyworth to guarantee Pitt's promise to pay the subcontractors on this job.

When the promise was made, the United States was satisfied with Pitt's performance insofar as completing work on the job. If there had been a problem with that aspect of Pitt's performance, the United States was protected by the performance bond. Therefore, there is no problem here of sorting out priorities between the United States and suppliers like Blount. *See Ardelt–Horn*, 316 F.Supp. at 263. Performance of the work involved in doing the job was complete. Performance by Pitt insofar as it promised to pay subcontractors and suppliers was not complete and it never has been.

The instant case is most like the case of *United States ex rel. Edward Hines Lumber Company v. Kalady Construction Co.*, 227 F.Supp. 1017 (N.D.Ill.1964) ("Kalady"). In *Kalady* the performance bond was to be rendered void if the "principal shall well and truly perform and fulfill all

the undertakings, covenants, terms, conditions, and agreements of said contract...." 227 F.Supp. at 1018. Of course, this language is almost identical to the language in the performance bond in the present case.

Also, in *Kalady*, the general contractor agreed in its contract with the United States that "[a]ll mechanics and laborers employed or working directly upon the site of the work ... will be paid unconditionally and not less often than once a week ... the full amounts due at time of payment...." 227 F.Supp. at 1018–1019. The payment bond had been exhausted in *Kalady* and the question was whether or not the laborers who had sued had recourse under the performance bond. The Court answered in the affirmative noting the "highly remedial" nature of the Miller Act and finding that the surety had indeed guaranteed the prime contractor's contractual obligation to see that all mechanics and laborers on the job were paid lawful wages when due.

The cases cited by defendants Powell and Keyworth do not lead me to believe that a different result should obtain here. In *American States Fidelity & Guaranty Co. v. The American State Bank, et al.*, 372 F.2d 449 (10th Cir.1967), the surety was suing the bank and others in a third-party action for actual and punitive damages, plus attorneys fees, because the surety had to pay a subcontractor who had sued the surety's prime contractor in a Miller Act case. The surety claimed that the third-party defendants had fraudulently induced the surety to write the bond for the prime contractor. The court held that the action was properly dismissed as to third-party defendants. The use plaintiff had sued on a payment bond and the surety had paid off pursuant to that bond. The surety's claim against the third-party defendants was founded on the *performance bond*, however. The Court simply held that the third-party claim was separate and

*Ardelt–Horn*, 316 F.Supp. at 262. After the passage of the Miller Act in 1935, subcontractors can sue on the payment bond without waiting until the United States is made whole. The predecessor, Heard Act, only required a single

bond securing both payment and performance. Thus, subcontractors would have to wait until any performance question was settled before they could be paid.

independent from the suit filed by the use plaintiff on the payment bond and that Rule 14, Fed.R.Civ.P., would only support interpleader where the third-party defendants are or may be liable to third-party plaintiff for all or a part of the original claim.

In reaching this decision, the court noted that the performance and payment bonds are separate obligations running to separate obligees. 372 F.2d at 450. That is certainly true, but it does not mean that a subcontractor like Blount cannot be a third-party beneficiary of a promise the prime contractor makes to the United States and cannot recover on a bond which guarantees that promise.

*United States Fidelity & Guaranty Co. v. A & A Machine Shop, Inc.*, 330 F.Supp. 1403 (S.D.Tex.1971) ("*A & A*") is also relied upon by defendants Powell and Keyworth. *A & A* cites *Kalady* but distinguished it based on the court's interpretation of the contracts in the two cases between the United States and the general contractor. 330 F.Supp. at 1406. The Court in *A & A* pointed out that the contract in question in that case provided for protection of materialmen and contractors but not subcontractors. *Id.*

In the instant case, Pitt expressly promised to pay its subcontractors and suppliers out of the contract proceeds. Exhibit 7. The court in *A & A* did not choose to rely on this distinction; rather, it relied upon *Ardelt–Horn.* As indicated above, the result reached in *Ardelt–Horn* is not at odds with the result reached in the instant case.

For the reasons indicated, the undersigned finds and concludes that defendants Richard F. Keyworth and Edgar L. Powell are jointly and severally liable to the plaintiff for the full amount of the payment bond, $21,210.95, plus an additional $21,-210.96 on the performance bond, for a total of $42,421.91.[3]

Messrs. Keyworth and Powell are entitled to judgment over on their cross-claim

and third-party claims against Pitt, Jerome A. Pittman and Minerva Banks, jointly and severally, in the amount of $42,421.91 plus $7,667.40 in reasonable attorney's fees and costs pursuant to the general indemnity agreement.

Order accordingly.

---

3. An order entered on January 10, 1991, awarding judgment to plaintiff and against Pitt in the amount of $46,351.00.