HOINESS–LaBAR INSURANCE, a Montana corporation, Appellant (Third–Party Defendant),

v.

JULIEN CONSTRUCTION COMPANY, a Wyoming corporation, Appellee (Plaintiff),

and

Allied Fidelity Insurance Co., an Indiana corporation, Appellee (Defendant and Cross–Defendant),

NIELSEN PLUMBING AND HEATING, INC., a Wyoming corporation, (Defendant, Cross–Complainant, and Third–Party Complainant).

Allied Fidelity Insurance Co., an Indiana corporation, Appellant (Defendant and Cross–Defendant),

v.

JULIEN CONSTRUCTION COMPANY, a Wyoming corporation, Appellee (Plaintiff),

and

Hoiness–LaBar Insurance, a Montana corporation, Appellee (Third–Party Defendant),

and

Nielsen Plumbing and Heating, Inc., a Wyoming corporation, Appellee (Defendant, Cross–Complainant, and Third–Party Complainant).

JULIEN CONSTRUCTION COMPANY, a Wyoming corporation, Appellant (Plaintiff),

v.

NIELSEN PLUMBING AND HEATING, INC., a Wyoming corporation, Appellee (Defendant, Cross–Complainant, and Third–Party Complainant),

and

Allied Fidelity Insurance Co., an Indiana corporation, Appellee (Defendant and Cross–Defendant),

and

Hoiness–LaBar Insurance, a Montana corporation, Appellee (Third–Party Defendant).

NIELSEN PLUMBING AND HEATING, INC., a Wyoming corporation, Appellant (Defendant, Cross–Complainant, and Third–Party Complainant),

v.

JULIEN CONSTRUCTION COMPANY, a Wyoming corporation, Appellee (Plaintiff),

and

Allied Fidelity Insurance Co., an Indiana corporation, Appellee (Defendant and Cross–Defendant),

and

Hoiness–LaBar Insurance, a Montana corporation, Appellee (Third–Party Defendant).

Nos. 86–268 to 86–271.

Supreme Court of Wyoming.

Oct. 8, 1987.

Dan B. Riggs, and Robert W. Brown of Lonabaugh & Riggs, Sheridan, for Hoiness–LaBar Ins.

Charles G. Kepler of Simpson & Kepler, Cody, for Julien Const. Co.

Michael K. Shoumaker of Shoumaker and Murphy, Sheridan, for Allied Fidelity Ins. Co.

John O. Housel of Housel and Housel, Cody, for Nielsen Plumbing and Heating, Inc.

Before THOMAS, CARDINE, URBIGKIT, and MACY, JJ, and GUTHRIE, J., Retired.

URBIGKIT, Justice.

This opinion discusses bond-liability issues stemming from the subcontractor's default in the course of the restoration of the Park County Courthouse. The subcontractor was issued a performance bond, but not the requested payment bond. We will affirm in part, reverse in part, and remand.

## FACTS

In 1984, Park County contracted with Julien Construction Company (Julien) to reconstruct and restore the old County Courthouse. Julien entered into a subcontract with Nielsen Plumbing and Heating, Inc. (Nielsen), the mechanical subcontractor. The form written subcontract provided that Nielsen would obtain both payment and performance bonds.[1] Thereafter, Nielsen ordered the required bond coverages from Hoiness–LaBar Insurance (Hoiness), an independent insurance broker writing with Allied Fidelity Insurance Co. (Allied). Representatives from Hoiness contacted Allied to inquire if the coverages could be issued, and approval was given. At that time, Nielsen, Hoiness and Allied all understood that two bond coverages were desired to insure both contract performance and bill payment. The memorandum order written by Nielsen to Hoiness stated:

> "Please send a bond and certificate of liability insurance for this job. *Enclosed is a copy of the sub-contract agreement.*" (Emphasis added).

An employee of Hoiness, intending to issue a bond with both coverages, used the wrong form, signed pursuant to a power of attorney, and issued only a performance bond. These bonds are written either in one document as a combined payment and

---

1. The subcontract agreement provided:
 "The Subcontractor further agrees that he will provide the Contractor, within 30 days following the execution of this contract, with 100% Payment and Performance Bonds conditioned for the faithful performance of this contract in all its particulars, duly executed with Surety Company acceptable to the Contractor as surety, and in the form and contents acceptable to the Contractor. If Subcontractor fails to comply with this provision, the Contractor, at its option, may declare this contract in default and may hold Subcontractor liable for all additional expenses incurred by Contractor as a result of Subcontractor's default."

performance bond, or separately in two documents with different coverages and separate provisions. Allied, the record reflects, had forms for a performance bond, a payment bond, and a combination performance and payment bond.[2]

Nielsen paid the billed premium[3] and received only the performance bond. None of the parties discovered the coverage omission until after subcontractor default problems developed approximately a year later in the spring and summer of 1985. This information emerged when Julien became aware that Nielsen's suppliers were having collection difficulties. After the resulting claim communications, Hoiness sought to obtain Allied's permission to issue the payment bond in conjunction with the already outstanding performance bond, but Allied refused.

In midsummer 1985, Nielsen's suppliers and subcontractors submitted payment claims to Allied which were rejected because no payment bond had been issued. Actually, the record reflects that the mechanical subcontract was essentially completed except for punch-list and warranty items. When Nielsen defaulted, Julien, the general contractor, completed these remaining back-charge or punch-list items, and paid suppliers who would otherwise have the right to make claims against the payment and performance bond provided by Julien to Park County, as required by statute. Payment of the bills and work completed was also necessary for Julien to secure escrow-fund release from the owner then withheld because of the outstanding materialmen's claims. After payment, Julien instituted this litigation against Nielsen and Allied and, at a later stage, added Hoiness as a third-party defendant to secure reimbursements of claims paid and final work-completion costs incurred. In March 1986, Allied went into receivership in Indiana, its state of domicile.

*The Parties' Claims:*

All four litigants, Nielsen, Allied, Hoiness and Julien, became actively involved in the trial litigation, and separately present appeals.

Julien asserted several claims in initial and supplementary pleadings. First, Julien sued Nielsen for breaching the subcontract by failing to complete its work, and by failure to pay the suppliers and sub-subcontractors. Second, Julien sued Allied for Allied's failure to pay Nielsen's materialmen under the performance bond. Third, Julien, in amended claims, sued Hoiness claiming that Julien was a third-party beneficiary of the contract between Nielsen and Hoiness and that Hoiness breached its contract with Nielsen by failing to procure the payment bond. Further, Julien separately claimed that Hoiness was negligent in failing to obtain the payment-bond coverage. Julien claimed attorney's fees and costs from all three defendants.

Nielsen also made multi-defendant claims, first claiming that Allied was liable to Nielsen for any judgment against Nielsen by virtue of the performance bond and payment bond which, though unissued, was requested and for which the premium was paid. The complaint also alleged damages for injury to reputation and bad-faith denial of payment under the bond as a premise for punitive damages. Nielsen asserted liability of Hoiness for any judgment obtained by Julien against Nielsen due to Hoiness' breach of its contract with Nielsen to obtain the proper coverage under the bonds. Again, Nielsen included claims against Hoiness for damage to its reputation, bad faith, and punitive damages. Nielsen also

---

**2.** The differentiation in bond phraseology is evidenced by the Allied joint-coverage bond form, wherein the language provisions include payment not included in the single form as demonstrated by the emphasized language.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal shall faithfully perform said contract according to its terms, covenants and conditions *and shall promptly pay all persons supplying labor or material to the Principal for use in the prosecution of the work under said contract,* then this obligation shall be void; otherwise it shall remain in full force and effect." (Emphasis added).

**3.** The billed premium was $4,211 for the $350,900 bond coverage. Generally, the Hoiness evidence reflected that no additional premium would have been required for issuance of the joint-coverage instrument.

asked for costs and attorney's fees from both Allied and Hoiness. Consequently, we have the contractor suing the subcontractor, the insurance broker and surety; and the subcontractor also suing the broker and surety.

Allied asserted a claim against Nielsen for indemnity in accord with the provisions of the issued performance bond documents. Allied then claimed indemnity from Hoiness, alleging that Hoiness negligently failed to properly prepare the bonds. Allied also sought to recoup its attorney's fees and costs from both Nielsen and Hoiness. Finally, Hoiness asserted an indemnity claim, including legal fees and costs, against Allied for Allied's refusal to honor the agency relationship and issue the payment bond. In summary, Allied sued the broker and bond principal, and the broker sued the surety.

*The Trial Court's Disposition:*

Not surprisingly, the trial court found that Nielsen's failure to pay its suppliers and materialmen constituted a material breach of its subcontract with Julien, and imposed liability for all consequent damages. Furthermore, under the contractual decision, Nielsen was also liable to Julien for costs and attorney's fees.

Next, the trial court found that Hoiness breached its agreement with Nielsen by failing to provide the payment-bond coverage as ordered, and found "that Julien was an intended beneficiary of the contract between Hoiness–LaBar and Nielsen * * * and the benefit of the bonds was solely for the protection of Julien." Thus, Julien had standing to maintain an action for the breach of the contract between Nielsen and Hoiness.

In defense to Julien's claim, Hoiness asserted that Julien and Nielsen had waived any rights they may have had to demand a payment bond by their failure to object to the absence of payment-bond coverage at the time the performance bond was issued. Responding to this defense, the trial court determined that there was no intentional waiver of a known right, and relied upon the course of dealing between Nielsen and Hoiness whereby Nielsen would request a "bond," and by that order Hoiness would provide both coverages. This course of dealing excused Nielsen's failure first to discover and then to object to the omitted coverage, and the course-of-dealing rationale also inured to the third-party beneficiary, Julien.

Thus, the trial court found that by the third-party beneficiary obligation breach, Hoiness was liable to Julien for resulting contractual damages. On that basis, the court granted judgment to Julien against Hoiness under the contract theory, and denied any award of attorney's fees in the absence of any contractual or statutory provision which would allow recovery. No apparent ruling on the negligence theory was made.

With regard to Julien's claim against Allied, the trial court found (1) that all the parties intended that both a performance and a payment bond issue; (2) Nielsen paid for both bonds; and (3) Allied granted Hoiness the authority to issue both bonds. Therefore, the trial court reformed the issued bond to accurately reflect the intentions of all the parties so that payment-bond coverage was provided. Under the reformed dual-coverage bond, the trial court held Allied liable to Julien for the amounts paid by Julien to Nielsen's suppliers, and additionally for costs and attorney's fees. The court found Nielsen liable for any and all amounts Allied may be called to pay based on a written indemnity agreement, and thus granted Allied's cross-claim against Nielsen and denied Nielsen's cross-claim against Allied.

Nielsen's cross-claim against Hoiness was denied because the court found that although Hoiness breached its contract with Nielsen, Nielsen had not suffered any damages as a result of the breach because of Nielsen's indemnity obligation to Allied. The court denied Nielsen attorney's fees from Hoiness by reasoning that the statute under which recovery was sought applies only to insurance companies (and sureties), but not insurance brokers (agents). Finally, the trial court considered Allied's and Hoiness' claims against each other and denied both, pointing to the distinct theories

under which both parties were separately liable to Julien.

In summary, the trial court granted judgment for Julien against Nielsen, Hoiness and Allied, and only imposed liability for Julien's costs and attorney's fees against Nielsen and Allied.[4] The trial court also granted Allied's indemnity claim against Nielsen. All other claims were denied.

## ISSUES

All four parties have appealed the judgment of the trial court and presented as appellate issues:

*Julien:*

I. The trial court erred in failing to find appellee Hoiness negligent in the nonissuance of payment-bond coverage (so that attorney's fees were recoverable in addition to the money judgment).

*Hoiness:*

I. Julien, as an incidental and not an intended beneficiary of the contract between Nielsen and Hoiness, may not sue for breach of that contract.

II. Julien, by its conduct, waived any right to performance of the contract between Hoiness and Nielsen.

III. The surety, Allied, is obligated under its performance bond to pay for all materials and labor for which Nielsen, the principal, was unable to pay.

IV. The surety, Allied, is liable under the terms of the bond, reformed to include a payment bond, to pay all unpaid laborers and materialmen.

And responsively to appellate briefs:

V. Julien cannot sue Hoiness for negligence.

*Allied:*

I. The trial court erred in not granting Allied a stay or continuance until reorganization or liquidation could be completed in Indiana.

 a. The requirement of "full faith and credit" and principles of comity compel the trial court's deference to the Indiana proceedings.

 b. The Insurance Commissioner of Indiana, as rehabilitator of Allied Fidelity Insurance Company, is an indispensable party to this action, and he cannot be sued herein.

II. The district court judge *procedurally* abused his discretion in granting Hoiness' Rule 15(b), W.R.C.P. motion to amend the pleadings to conform to the evidence which reformed the bond to effectuate a payment-bond coverage.

III. The district court judge erred *substantively* in reforming to add the payment-bond coverage on grounds of mutual mistake.

And responsively to appellate briefs:

IV. Allied should have judgment against Hoiness.

*Nielsen:*

I. Hoiness was negligent in its failure to obtain payment-bond insurance in favor of Nielsen.

II. Hoiness is responsible to Nielsen for reasonable attorney's fees and costs incurred by Nielsen based on statutory obligation, contract and negligence.

## DECISION AND ANALYSIS

*Hoiness' Rule 15(b), W.R.C.P. Motion to Amend the Pleadings:*

During the trial but after evidence was closed, Hoiness moved the court to amend its pleadings to conform to the evidence. Hoiness sought only to amend the pleadings so that it, too, had a claim against Allied. The trial court's subsequent decision letter indicated that the court had granted Hoiness' motion, yet denied Hoiness' cross-claim against Allied. Instead, the trial court apparently also amended Julien's complaint premised on the motion of Hoiness to include a claim for reformation of the performance bond because of mutual mistake, and allowed Julien recovery against Allied on that basis. Julien did not support the reformation for the obvious reason of insolvency of Allied as well as

---

4. The award of costs and attorney's fees from Nielsen and Allied is probably meaningless be-

cause of the insolvency of those entities.

Nielsen and apparent collectability only from Hoiness.

■ This court will reverse a trial court's decision to grant or deny a Rule 15(b) motion only where there has been an abuse of discretion. *Rose v. Rose*, Wyo., 576 P.2d 458 (1978); *Breazeale v. Radich*, Wyo., 500 P.2d 74 (1972); *Strahan v. Strahan*, Wyo., 400 P.2d 542 (1965). In determining the propriety of an amendment subject to this review, the basic guideline to be followed is whether or not the allowance of the amendment prejudiced the adverse party. *Rose v. Rose*, supra; *Beaudoin v. Taylor*, Wyo., 492 P.2d 966 (1972).

■ We find no authority to support the trial court's procedural actions. As noted, Julien, the party allowed to recover on the reformed bond, opposed Hoiness' motion to amend the pleadings to include the reformation claim. None of the parties had initially ·sought reformation of the bond because of mutual mistake, and that issue was not litigated; it was only urged upon the trial court by Hoiness in a supplemental brief filed after all the evidence had been presented. Because this issue was presented as an after-thought, without the benefit of any evidence designed to challenge or support Hoiness' claim, we think that the trial court's Rule 15(b) amendment was prejudicial to Allied. The amendment was probably even more prejudicial to Julien which sought no new bond from the insolvent surety, but rather, sought the old liability for the negligent insurance agency.

Allied had no opportunity to present evidence regarding mutual mistake or reformation. On appeal, Allied makes several arguments why a payment bond cannot be created by reformation based on mutual mistake. Certainly, it should have been allowed to make those arguments to the trial court. We hold that Allied was prejudiced by its lack of opportunity to litigate the reformation issues below, and, therefore, the trial court's amendment of the pleadings pursuant to Rule 15(b) was an abuse of discretion. Consequently, it is necessary to reverse the trial court's judgment for Julien against Allied based on the reformed payment bond.

*Reformation:*

With the procedural decision on the motion to amend, this court has effectively eliminated the issue of reformation from the case, and substantive discussion would be academic in context and will not be pursued. *Feeney v. State*, Wyo., 714 P.2d 1229 (1986); *Reno Livestock Corporation v. Sun Oil Co.*, Wyo., 638 P.2d 147 (1981); *Chicago & Northwestern Ry. v. City of Riverton*, 70 Wyo. 119, 247 P.2d 660 (1952).

*The Stay of Litigation Against Allied:*

■ Next, we will address Allied's claim that this action against Allied should have been stayed because of the full faith and credit clause of the United States Constitution and because of principles of comity, and because Allied's rehabilitator, the Insurance Commissioner of Indiana, was an indispensable party to the action. Both Wyoming and Indiana have adopted the uniform insurers' liquidation act, found at § 26–28–101, et seq., W.S.1977. The relevant portion of the uniform act provides in part:

> "During the pendency of any delinquency proceedings in this or any reciprocal state, no action or proceeding in the nature of an attachment, garnishment or execution shall be commenced or maintained in the courts of this state against any delinquent insurer or its assets." Section 26–28–118, W.S.1977.

We agree with Allied that under principles of comity and under the full faith and credit clause of the United States Constitution, the Wyoming courts should adhere to the provisions and restrictions contained in the uniform act.

■ A careful reading of the above-quoted statute reveals that the uniform act enjoins the enforcement of a judgment through attachment, garnishment or execution proceedings. The act does not, however, prohibit a party from maintaining an action to obtain a judgment, or prohibit a court from entering a judgment. The act only prohibits actions to enforce or collect on a judgment. The receivership proceeding in Indiana is more properly an issue affecting the collectability and enforceabili-

ty of any Wyoming judgment. The uniform act does not contemplate the discontinuance of an action to obtain a judgment underway in Wyoming. We find that the trial court's action was entirely consistent with the uniform act.

Allied's next contention that Indiana's Insurance Commissioner was an indispensable party to this action also fails. Under Rule 19(a), W.R.C.P., "[a] person who is subject to service of process shall be joined as a party in the action * * *." Thus, in order to be an indispensable party, that party must be subject to service of process. Allied has not shown that the Indiana Insurance Commissioner was subject to service of process in Wyoming, and, in fact, asserts that the Commissioner is beyond the jurisdiction of the Wyoming court. Therefore, the Commissioner cannot be an indispensable party to this action, and the trial court did not err in refusing to make the Commissioner a party. This litigation was commenced long before Allied became involved in rehabilitation proceedings in Indiana, and the Wyoming court was entitled to conclude this case without involving the Indiana Insurance Commissioner unless the receiver intervened to assist in actively concluding the pending trial by liability determination. We do not understand the asserted differential between Allied that then and now continues as a totally involved litigant and the receiver or conservator which never entered a litigative appearance in the continuing course of this lawsuit.

*Julien's Standing to Sue for Breach of the Contract Between Nielsen and Hoiness:*

Hoiness argues that the contract between Nielsen and Hoiness was made only for the benefit of Nielsen, and that Julien was not an intended beneficiary. We do not find Hoiness' argument persuasive, in concurring with the trial-court decision that Julien was an intended third-party beneficiary of the Nielsen–Hoiness payment/performance-bond contract.

In *Peters Grazing Association v. Legerski,* Wyo., 544 P.2d 449, 457 (1975), reh. denied 546 P.2d 189 (1976), we stated:

"* * * Where a person makes a promise to another for the benefit of a third person, such third person may maintain an action thereon even though he is a stranger to the contract and the consideration therefor and had no knowledge of the contract when it was made and was not specifically named therein so long as he is otherwise sufficiently described or designated."

Nielsen did obtain a benefit from its contract with Hoiness in its eligibility to enter into and continue the construction subcontract with Julien. It was Julien that required Nielsen to obtain the bonds for the protection of Julien. This is not disputed by Hoiness which by brief, however, argues, "The fact that the *bonds* to be obtained under the contract were intended to benefit Julien Construction does not make Julien Construction an intended beneficiary of the *contract.*" We refuse to follow the semantic gymnastics urged upon us by Hoiness and contrarily hold that Julien was an intended beneficiary of both the contract and the bond which attaches to Nielsen's agreement with Hoiness to be furnished the bond. Consequently, Julien has standing to maintain a breach-of-contract claim against Hoiness.

"It is a well settled rule of law that where one person agrees with another, on a sufficient consideration, to do a thing for the benefit of a third person, the third person may enforce the agreement * * *." *Peters Grazing Association v. Legerski,* supra, 544 P.2d at 457.

See also *Kaiser Engineers, Inc. v. Grinnell Fire Protection Systems Co., Inc.,* 173 Cal.App.3d 1050, 219 Cal.Rptr. 626 (1985), following the same rule.

*The Nature of the Default:*

It is apparent from trial exhibits that the project was substantially completed by Nielsen as mechanical subcontractor. The Julien back-charge claim, which is the basis of its money prayer and ultimate award, was $156,649 for unpaid subcontractors or suppliers to Nielsen and only $1,940 as

finishing costs. Of the 18 creditors included in the $156,649 payment, at least 17 had received identical denial letters from Allied based on nonissuance of a payment bond as written in July of 1985. Contractor takeover and completion costs were nominal, essentially including punch-list type final work. It should also be noted that without regard for the absence of a litigant's argument or briefing here, this amount of $1,940 was unquestionably due from Allied to Julien as covered specifically and directly by the *performance bond*. Properly at issue were only the $156,649 unpaid subcontractor bills as a payment obligation.

It should also be noted that the written subcontract form used by Julien did not include a customary lien-claim indemnity or bill-paid covenant provision. Actually, these requirements were substantially to have been accomplished by virtue of the subcontractor's execution as principal of the payment bond for which Allied, by additionally signing, became surety. The subcontract agreement provided that the subcontractor:

"* * * will furnish all materials and labor * * *.

 * * * * * *

"* * * indemnify and save harmless the Contractor from any and all manner of claims or suits for infringement of patents * * *."

It was a trial argument of Hoiness, now continued on appeal, that the covenant to furnish a 100 percent payment and performance bond meant that the issuance of the performance bond insured issuance also of a payment bond by virtue of the nonperformance-of-the-contract provision. The default terminology, "If Subcontractor fails to comply with this provision, the Contractor, at its option, may declare this contract in default and may hold Subcontractor liable for all additional expenses incurred by Contractor as a result of Subcontractor's default," does not necessarily support the convoluted performance-bond liability arising from neglect to furnish the payment bond which inures as a liability to the issuer of the payment bond who was not aware of the dual bond order given to the issuing agent or the specific premium-payment purpose.

### Performance–Bond Requirement of Payment–Bond Obligation:

■ The heavily contested and principal substantive issue of this appeal arises from the contention of Hoiness that the performance bond required Allied to pay the subcontractor claims as a stated bond undertaking, and that consequently, if it was negligent or in breach of contract to fail to issue the payment bond, which contendably had duplicative coverage, no damage was caused either to Nielsen or Julien. Consequently, we are faced with the issue whether or not, by interpretation of the performance bond and the terms of the subcontract, the payment obligation under suretyship law existed without the additional execution of a payment bond. The issue had been heavily debated in pretrial argument by the litigants with an attendant decision of the trial court that a payment bond was different from a performance bond. This resolution was then clouded by the decision to reform and essentially create a payment bond by acceptance of Hoiness' Rule 15(b) motion to amend following trial. No specific decision on this contention was made by the court at trial conclusion, although the judgment granted to Julien against Hoiness essentially constitutes a denial of the validity of this claimed defense.

This is the money issue of the appeal, in that Hoiness, the insurance broker, seeks to avoid damage liability on the premise that Julien sustained no damages in contractual breach since Allied should have paid in any event. Consequently, Hoiness argues that nonissuance of the payment bond did not adversely affect Julien who retained identical rights without the requested protection from the additional payment-bond coverage.

The number of cases that can be found which consider the obligation of the surety in writing a performance bond to be responsible for payment defaults is exten-

sive.[5] This court is not now inclined to base a decision by rule selection, and particularly so because of the unusual absence of any contractual covenants of payment or lien-claim, hold-harmless provision in the subcontract. Consequently, we review the standards and results from the events of occurrence in that subcontractor nonpayment occurred in spring and early summer of 1985, with attendant denial by Allied premised on the absence of bond liability, and Allied did not go into insolvency until March of 1986, nine months later.

If for no other reason than the benefit of the chance or opportunity principle, there was a singular business advantage to Julien if the payment-bond obligation had clearly existed in 1985 when the unpaid-supplier issues first arose. *Zinnel v. United States Shipping Board Emergency Fleet Corporation,* 10 F.2d 47 (2d Cir. 1925); *Action Ads v. Judes,* Wyo., 671 P.2d 309 (1983); *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* Wyo., 664 P.2d 27 (1983).

The record in this case reflects that Park County would not release retainages until the unpaid claims against the insolvent subcontractor were paid. Whether or not the county was properly protected by the surety bond issued with the contractor has little significance if by unilateral decision of the owner the contractor cannot receive final construction contract payments without suit. The business and financing justification for Julien to pay to get the retainage and then sue Allied, Nielsen and Hoiness for repayment rather than Park County for collection is self-evident.

Consequently, we determine, without regard for the legal conflict derived from cases where subcontractors seek to enforce performance-bond provisions to secure obligation payment, that the failure of Hoiness to provide the agreed bond for which Hoiness was paid caused damage in the amount consequently paid by Julien, and that any dispute between Hoiness and Allied can, if they desire, be further pursued in their continued litigation upon remand. On this record, as an issue not decided by the trial court by express decision, we do not have sufficient facts upon which either

**5.** Compare *Seaboard Surety Co. v. Standard Accident Insurance Co.,* 277 N.Y. 429, 14 N.E.2d 778, 117 A.L.R. 658 (1938) with *Johns–Manville Sales Corp. v. Reliance Insurance Co.,* 410 F.2d 277 (9th Cir.1969); *Sun Indemnity Co. of New York v. American University, Washington, D.C.,* 58 A.D.C. 184, 26 F.2d 556 (1928); Annot., 77 A.L.R. 21; Annot., 118 A.L.R. 57; Werbin, Law for Contractors, Architects and Engineers, 265 (1961); and Hart and Kane, *What Every Real Estate Lawyer Should Know About Payment and Performance Bonds,* 17 Real Property Probate and Trust J., 674, 675–676 (1982):

"2. *Performance Bond.* After the owner accepts the proposal, this bond, providing security in the form of a penal sum generally equal to the contract price, promises that the contractor will perform the terms of the contract. The bond is conditioned to protect the owner to the extent that the surety promises that the contract will be completed as specified. Before the surety uses its own funds to cure the default of the contractor or to pay for the completion of the project, the owner must make available to the surety the contract sums that remain unpaid at the time of the contractor's default.

"3. *Labor and material payment bond.* In addition to the performance bond, owners generally require a contractor to give assurance that all bills submitted by laborers, materialmen and subcontractors will be paid. This assurance permits the owner to take possession of a lien-free project on completion

protected from third party claims which can result in materialmen's or mechanics' liens against the property. Creditors' claims on payment bonds have generated a considerable amount of litigation. The major areas of concern are: (1) who are the eligible claimants; (2) what types of claims are covered; and (3) have the requisite notice requirements been met.

\*　\*　\*　\*　\*　\*

"6. *Combined performance and payment bond.* Combined performance and payment bonds may be required if the contract requires the contractor to pay bills, as well as to hold the owner harmless from mechanics' liens claims. Under those circumstances, a combined payment and performance bond may be required. However, it is better to require separate performance and payment bonds to assure adequate protection for the owner and creditors. The combined bond may not cover every contract duty required. Moreover, the bond penalty, under a combined bond, may not be sufficient to complete performance and pay unpaid subcontractors, materialmen, or suppliers in the event of default. Separate payment and performance bonds eliminate the problem of who should be paid by providing two penal sums."

See *Insulation Contracting and Supply v. Kravco, Inc.,* 209 N.J.Super. 367, 507 A.2d 754 (1986).

a factual decision or a determination as a matter of law can be justified to determine performance-bond obligation for the supplier, and subcontractor claims under these specific circumstances where no specific hold-harmless or payment clause was included in the subcontract. We here recognize the right of subrogation between the issuing agency and the insurance carrier, if, in fact, the carrier has a liability beyond $1,920, but do not determine whether that liability can be established from the four corners of the performance bond and the written subcontract terms. *Commercial Union Insurance Company v. Postin*, Wyo., 610 P.2d 984 (1980); *Criss v. Folger Drilling Company*, 195 Kan. 552, 407 P.2d 497 (1965).

It is clear that both the beneficiaries and the aspects of the two forms of surety coverage, performance and payment, are different, with an obvious example in the circumstance that a payment-bond obligation can be enforced by the supplier-creditor, but the performance bond cannot: "shall promptly and faithfully perform said subcontract" (performance bond); "shall faithfully perform said contract according to its terms, covenants and conditions and shall promptly pay all persons supplying labor or material to the Principal for use in the prosecution of the work under said contract" (payment bond).

By this analysis we conclude that Julien did not get what it desired and contractually requested in the surety instrument as a guarantee to not only protect against any lienable obligation of the subcontractor to pay its suppliers and subcontractors, but also to provide first-person obligation protection to such suppliers and subcontractors. Pragmatically, the general contractor was not obligated to litigate interpretative nuances of a performance bond to determine whether that coverage included payment-bond characteristics when the broker's obligation was to furnish the payment bond which would have obviated the need for litigation. We could carry the analysis further by the supposition that Allied was financially responsible, but conjectural analysis contrary to the stated fact does not afford a logical basis for a legal resolution. We hold that Julien was not obligated to litigate a performance bond to determine whether payment-bond characteristics existed, and such an analysis and determination can be further pursued between the insurance agency and the insolvent surety if either or both care to continue that pursuit. A clear payment-bond protection is economically better than a conjectural performance-bond repayment right. In substantive conclusion, this court will recognize a right in the nature of subrogation to the defaulting insurance agency, but not a liability defense. *Commercial Union Insurance Company v. Postin*, supra, McClintock, J., dissenting; *Wyoming Building & Loan Association v. Mills Construction Co.*, 38 Wyo. 515, 269 P. 45, 60 A.L.R. 418 (1928).

*Allied's Liability to Julien for Attorney's Fees:*

The trial court's award to Julien of its costs and attorney's fees from Allied was based on Allied's failure to comply with the *payment* bond created by reformation. As reformed, the bond imposes liability on Allied to Julien for the amounts Julien paid out, less what it retained on the contract with Nielsen, plus interest, costs and attorney's fees. Section 26–15–124(c), W.S.1977. We have held that it was error to reform the bond, and no payment bond existed. We cannot tell whether demand was made for payment of the completion costs accrued from final completion requirements. At this time, with affirmance of the judgment of Julien against Hoiness to which attorney's fees will be added, we do not know whether Julien will care to continue in the litigation by asserting a $1,940 claim against Allied with a claim for attorney's fees implicit therein. These claims can be properly considered on remand.

*Nielsen's Liability to Julien:*

The subcontract between Julien and Nielsen provides at paragraph Fifteenth as quoted in n. 1, and at paragraph Sixteenth:

"If the Contractor is required to prosecute or defend any legal action as the

result of the failure of the Subcontractor to fully comply with the provisions of this contract, Subcontractor shall pay all legal costs and expense, including a reasonable attorney's fee incurred by the Contractor as a result of the prosecution or defense of said legal action."

Nielsen failed to properly perform the subcontract work, and failed to obtain the payment bond as required in the subcontract. We agree with the trial court that Nielsen's breach entitled Julien to recoup its attorney's fees from Nielsen. We also agree that Nielsen is liable to Julien for the consequent damages—all additional expenses incurred by Julien as a result of Nielsen's failure to complete work under the subcontract.

*Hoiness' Negligence:*

 We also agree with the trial court that Hoiness breached its agreement with Nielsen to obtain a payment bond for the project. On appeal, Julien asserts that the trial court also should have found that Hoiness was *negligent* in failing to obtain the proper coverage under a payment bond for Nielsen as principal and Julien as a third-party beneficiary. Under the negligence theory, Julien asserts that it is entitled to recovery of its costs and attorney's fees from Hoiness, a claim which under the breach of contract finding, the trial court denied.

This court has held:

"The law is clear that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance for another and through fault or neglect fails to do so, will be held liable for any damage resulting. His liability arises under the concept that he is agent for the insured in negotiating for a policy and owes a duty to his principal to exercise reasonable skill, care and diligence in causing the issuance of a policy. His liability may arise either for breach of contract or negligent default in the performance of a duty imposed by contract, at the election of his client." *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* supra, 664 P.2d at 32.

Courts in other jurisdictions have held that not only the principal, but also a third-party beneficiary under the insurance policy is entitled to maintain an action against the agent for breach of his duty to procure the appropriate coverage. *Sturcke v. Clark,* La.App., 261 So.2d 717 (1971), app. denied 262 La. 309, 263 So.2d 47 (1972); *Rider v. Lynch,* 42 N.J. 465, 201 A.2d 561 (1964). We agree with those courts, and hold that Julien, as a third-party beneficiary of Hoiness' agreement to obtain the bond for Nielsen, is entitled to maintain an action against Hoiness for breach of contract and for negligence.

 In Count I of Julien's amended complaint against Hoiness, Julien asserts the breach-of-contract claim. In Count II, Julien asserts a negligence claim. The trial court granted judgment for Julien on the breach-of-contract claim, but did not determine Julien's claim against Hoiness for negligence in perhaps viewing that negligence claim as duplicative. While we do not intimate that Julien could be entitled to recover twice for Hoiness' failure to procure the bond for Nielsen, we do recognize the validity of a negligence claim under the unquestioned facts. On that basis, we conclude that Julien, in recognition of the negligence of Hoiness, should be granted attorney's fees as the natural and proximate result as injury from the negligent omission. Absence of the payment bond precipitated the litigation and incurrence of attorney's fees to pursue repayment by suing Allied and Nielsen. We do not necessarily say here nor decide that the right would have occurred if the initial litigation had only involved Hoiness. See Annot., 45 A.L.R.2d 1183. See also, *Safway Rental & Sales Co. v. Albina Engine & Machine Works, Inc.,* 343 F.2d 129 (10th Cir.1965); *Hursh Agency v. Wigwam Homes, Inc.,* supra; *Kvenild v. Taylor,* Wyo., 594 P.2d 972 (1979); *Brem v. United States Fidelity & Guaranty Co.,* D.C.App., 206 A.2d 404 (1965); *Griffin v. Bredouw,* Okla., 420 P.2d 546 (1966). Cf. *L.F. Pace & Sons, Inc. v. Travelers Indemnity Co.,* 9 Conn.App. 30, 514 A.2d 766, certification denied 201 Conn. 811, 516 A.2d 886 (1986) (attorney's fees included in the punitive-damages award).

In this case, where negligent failure to provide the agreed bond coverage invoked litigation with the surety and the subcontractor, we find the damages proximately resulting properly include attorney's fees incurred.

*Hoiness' Liability to Allied:*

 The trial court correctly ruled that Hoiness' negligence did not result in its liability to Allied. Allied was in no way harmed by Hoiness' failure to issue the payment bond. If the payment bond had been issued, it is fair to contemplate that Allied, while still solvent, would have paid the subcontractor debts, and consequently, as a matter of law, Allied cannot now assert a claim against the agency in failing to issue a bond which would have created an additional liability.

*Waiver:*

 In its decision letter, the trial court comprehensively considered the evidence and then concluded:

"Hoiness–LaBar asserts that Julien and Nielsen have both waived any right they may have had to demand a payment bond by not objecting sooner to the failure to issue the payment bond along with the performance bond, citing 17A C.J.S. Contracts, §§ 490, 491, pp. 688, 699 (1963); *Western Transmission Corp. v. Colorado Mainline, Inc.,* 376 F.2d 470 (10th Cir.1967); and *Quin Blair Enterprises, Inc. v. Julien Construction Co.,* 597 P.2d 945, 951 (Wyo.1979). The Court finds, however, that there was no intentional waiver of known right in this instance. 28 Am.Jur.2d Estoppel and Waiver, § 158, p. 840 (1966). The testimony at trial was that the absence of a payment bond was not noticed until such time as payments to Nielsen's suppliers became a problem in 1985. While there may be a duty on the part of an insured to read an insurance policy, *State Farm Mutual Automobile Insurance Co. v.*

*Petsch,* 261 F.2d 331 (10th Cir.1958), the failure to read the policy does not constitute a waiver in all instances. Annot. 32 A.L.R.2d 661 (1970); *Carlton Lumber Co. v. Lumber, Insurance Co.,* 81 Or. 396, 158 P. 807, 809–810 (1916); *Journal Co. v. General Accidental Fire & Life Assurance Corp.,* 188 Wis. 140, 205 N.W. 800, 803 (1925). In this case, there was a course of dealing between Hoiness–LaBar and Nielsen in which Nielsen would request a 'bond' and Hoiness–LaBar would provide either a combined performance and payment bond or separate performance and payment bonds. The course of dealing between the parties excused the failure on the part of Nielsen to object to the absence of the payment bond prior to June, 1985. This course of dealing, the Court finds, also inured to the benefit of the intended third party beneficiary."

This court agrees that under these circumstances the failure of all participants to observe the omitted coverage did not constitute a waiver. *Cusimano v. St. Paul Fire and Marine Insurance Co.,* La.App., 405 So.2d 1382 (1981), writ denied 410 So.2d 762 (1982); *Rider v. Lynch, supra,* 201 A.2d 561.

We agree that Julien correctly states the law.

"Before there can be a waiver, it must be shown that the party against whom the waiver is asserted had at that time knowledge, actual or constructive, of the existence of its rights or of the material facts upon which they depend." 28 Am. Jur.2d Estoppel and Waiver § 158.

### CONCLUSION

Where does all of this leave the trial court and the litigants?

1. The judgment for Julien and against Hoiness is affirmed, but amended to award Julien attorney's fees stipulated to be $8,500.[6]

---

6. An interesting question is created as to whether the trial court was in error in its judgment award of $114,853 against Hoiness, in consideration of the totals involved. The unpaid claims

totaled $156,649, and the follow-on work totaled $1,940, a grand total of $158,589. An unpaid retainage existed, which left a balance due on the subcontract as a difference of $114,853. Ob-

2. Judgment should be entered in favor of Julien against Allied in the sum of $1,940, and the trial court should determine under the claims payment provisions of § 26–15–124(c), W.S.1977 what, if any, part of the total attorney's fees of $8,500 might be a separate obligation of Allied. Otherwise the judgment in favor of Julien and against Allied is reversed as constituting Julien's election of remedies to proceed against Hoiness.

3. The Julien judgment against Nielsen is affirmed.

4. The case is remanded to afford Hoiness an opportunity to secure a trial-court determination as to what portion, if any, of the $114,853 in excess of the unquestioned $1,940 amount may be subrogated against Allied. Subrogation can be on the basis that the peculiar status of the claims, the specific terminology of the subcontract, and the nature of the Wyoming public contract statute created a determinable payment obligation for which Julien had a claim and for which Hoiness may be subrogated within the performance terminology of the surety bond as it was actually issued for repayment of supplier and subcontractor claims.

5. Appeal costs, but no appellate attorney's fees, will be granted to Julien against Hoiness and Nielsen. No other appeal costs will be allowed.

The case is remanded for further proceedings in conformity herewith.

viously the $1,940 is not claimable against the insurance agent, since it is clearly covered by the performance bond. However, it can be assumed that the trial court, in recognition of the status, could apply the retainage first to the completion costs of $1,940, so that there was left remaining only $42,795 retainage to be applied to the $156,649 unpaid subcontractor claims.

Consequently, based on an election of the application of funds, we do not find it necessary as a matter of law to reduce the judgment entered, although at the same time we recognize that Allied retained a liability on the performance bond for the completion expenses. Although no double recovery is permitted, Julien can recover first wherever it can.